(No. 50555.—

CARMA LYNN HUME BOYER, Appellee, v. JOHN CARL
BOYER, Appellant.

*Opinion filed November 22, 1978.*

Paul E. Riley, of Mudge, Riley & Lucco, of Edwardsville, for appellant.

Wiseman, Shaikewitz, McGivern & Wahl, of Alton, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Plaintiff, Carma Lynn Hume Boyer, who now resides in Madison County, filed an action in the circuit court of that county, seeking "to establish and enroll decree for divorce from the State of Georgia" as an Illinois judgment. She also prayed for an order requiring the defendant, John Boyer, her ex-husband, to pay arrearages in child-support and alimony payments and for a modification of the divorce decree increasing child-support payments. The husband resides in Georgia and was personally served with process in that State. It is plaintiff's position that the failure of the defendant to pay child-support and alimony payments as required by the Georgia divorce decree constituted the "commission of a tortious act" in Illinois and that he thereby submitted himself to the jurisdiction of the courts of this State and service of

process was properly had upon the defendant in Georgia. (Ill. Rev. Stat. 1975, ch. 110, par. 17(1)(b).) The defendant filed a special limited appearance challenging the jurisdiction of the Illinois court and moved to quash the service of process. The circuit court of Madison County refused to exercise jurisdiction over the defendant and quashed the service as prayed. The appellate court held that the failure to make the support and alimony payments constituted the commission of a tortious act in Illinois, which authorized the circuit court of Madison County to exercise jurisdiction over the defendant for the purpose of any cause of action arising out of the tortious act, in this case an action to recover the arrearages, but not for the purpose of modifying the divorce decree (57 Ill. App. 3d 555). We granted the defendant leave to appeal.

The issue argued in this court is whether the failure of the defendant, who resided in Georgia, to make the alimony and support payments required by the divorce decree of the Georgia court to his wife and children who reside in Illinois constitutes the commission of a tortious act in Illinois so as to submit the defendant to the jurisdiction of our courts under section 17 of our Civil Practice Act. We must also consider this question as it relates to the minimum-contact Federal due process requirements.

The plaintiff and defendant were divorced in Georgia in 1971. The decree awarded custody of the two children to the plaintiff and required support and alimony payments to be made by the defendant in accordance with a written agreement between the parties which had been previously entered into and which was attached to the decree. The defendant husband was given visitation rights. Some time after the entry of the decree the plaintiff and the two children moved to Illinois, and about 3 years later the action in this case was instituted in Madison County. The defendant remarried and remained a resident

of Georgia. The plaintiff alleges arrearages in support and alimony payments of about $1,000. Although there are some allegations in plaintiff's pleadings to the contrary, the defendant, several times in his petition for leave to appeal, which he elected to have stand as his brief, states that he has never been in the State of Illinois. This has not been disputed by the plaintiff in either her answer to defendant's petition for leave to appeal, or in her brief.

Section 17 of the Civil Practice Act provides that service of process may be made personally on a person outside of the State of Illinois if that person submits to the jurisdiction of this State by doing any of certain designated acts, including "the commission of a tortious act within this State." Jurisdiction extends to "any cause of action arising from the doing of any such acts." In *Nelson v. Miller* (1957), 11 Ill. 2d 378, 389, this court reviewed the history of extraterritorial jurisdiction for State courts and said that sections 16 and 17 of the Civil Practice Act "reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due-process clause." In *Nelson,* the defendant, a resident of Wisconsin, had committed a single tortious act in Illinois, an act of negligence which caused an injury to the plaintiff. In discussing section 17 in relation to the due process requirement, this court emphasized that the requirement that a defendant defend the action in Illinois must be reasonable under the circumstances of the case.

Section 37 of the Restatement (Second) of Conflicts of Laws (1971) provides that a State may exercise jurisdiction over a person "who causes effects in the state by an act done elsewhere," but limits the breadth of this provision with the qualification "unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable." Thus, reasonableness in *Nelson* and again in the Restate-

ment appears to be a touchstone against which the validity of the exercise of a State's jurisdiction over a nonresident is measured.

In *Gray v. American Radiator & Standard Sanitary Corp.* (1961), 22 Ill. 2d 432, the wrong complained of did not originate in the conduct of a defendant physically present in the State, but arose from acts performed in another State in the negligent construction of a safety valve. The court, in construing the term "tortious act" as used in section 17, held that for an act to be tortious it must have caused an injury, and since the injury which was caused by the defective valve occurred in Illinois, the court concluded that the tortious act had been committed in Illinois. The court noticed that *Nelson* had held that the statute contemplated the exertion of jurisdiction over nonresident defendants to the extent contemplated by the due process clause and that *Nelson* had announced the standard of reasonableness and fairness. In reviewing the authorities, this court in *Gray* also noted that the United States Supreme Court in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, had held that a nonresident defendant must have certain minimum contacts with the State attempting to assert jurisdiction over it. The *Gray* court then held that the question of what type of conduct the defendant must commit within the State to satisfy the requirement of minimum contact must be answered by determining what is "fair and reasonable in the circumstances." (22 Ill. 2d 432, 440.) The court went on to note the trend toward expanding State jurisdiction over nonresidents but cited *Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228, as holding that courts cannot assume that this trend heralds the eventual demise of all restrictions on personal jurisdiction of State courts. Discussing further the standard of fairness and reasonableness, the *Gray* court stated:

"An orderly and fair administration of the law throughout the nation requires protection against being compelled to answer claims brought in distant States with which the defendant has little or no association and in which he would be faced with an undue burden or disadvantage in making his defense. It must be remembered that lawsuits can be brought on frivolous demands or groundless claims as well as on legitimate ones, and that procedural rules must be designed and appraised in the light of what is fair and just to both sides in the dispute." 22 Ill. 2d 432, 441.

The United States Supreme Court in *Hanson v. Denckla* emphasized that the restrictions on State jurisdiction over nonresidents are more than a guarantee of immunity from inconvenience or distant litigation (the fairness and reasonableness criteria); they are a consequence of territorial limitation on the power of the respective States. "However minimal the burden of defending in a foreign tribunal, a defendant may not be called upon to do so unless he has had the 'minimal contacts' with that State that are a prerequisite to its exercise of power over him." (357 U.S. 235, 251, 2 L. Ed. 2d 1283, 1296, 78 S. Ct. 1228, 1238.) The court in that case then further stated:

"[I] t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298, 78 S. Ct. 1228, 1240.

The appellate court in our case, in holding the failure of the defendant to make support payments constituted the commission of a tortious act in Illinois, relied upon *Poindexter v. Willis* (1967), 87 Ill. App. 2d 213. *Poindexter* held that the failure of a nonresident defendant to

support his illegitimate child, a child fathered in Illinois and a resident of Illinois, was a section 17(1)(b) tortious act. The *Poindexter* court reasoned that the Illinois Paternity Act (Ill. Rev. Stat. 1965, ch. 106 3/4, pars. 51-66) placed a duty to support on the father. Although there is language in *Poindexter* which supports the holding of the appellate court in our case, the facts supporting the *Poindexter* decision were much broader and established a substantially greater contact by the defendant with this State than do the facts now before us.

Recently, in *Kulko v. California Superior Court* (1978), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690, a case factually very similar to ours, the United States Supreme Court, considering the facts of that case in light of both the minimum-contact requirement and the reasonableness test, held that California could not exercise jurisdiction over a nonresident defendant father in a suit to modify a foreign divorce decree to change custody of the children and to increase support payments. In that case, the plaintiff wife and the defendant father had been married in California in 1959 while the defendant was on a 3-day stopover in that State en route to military service overseas. At the time of the marriage, both parties were residents of New York, and following the marriage the wife returned to New York, as did the husband after he returned from military service. The two children of the marriage were born in New York. In 1972 the parties separated and the plaintiff moved to California. She later returned to New York, where a separation agreement was executed which provided that the children would remain in the custody of the father during the school year but would spend their vacations with the mother. The agreement also provided for the payment of child support. This agreement was later incorporated in the terms of the divorce decree and the wife then returned to California, where she remarried. In 1973 one child manifested a desire

to live with her mother, and the father bought his daughter a one-way plane ticket to California and permitted her to take her clothing with her. Later, the other child, unknown to the father, informed the mother of his desire to live with her, and the mother sent him a plane ticket and he went to California and took up residence with his mother. The husband appeared specially and moved to quash service of summons on the grounds that he lacked minimal contacts with the State to warrant its assertion of personal jurisdiction over him. The California Supreme Court upheld the State's jurisdiction over the defendant (*Kulko v. Superior Court* (1977), 19 Cal. 3d 514, 564 P.2d 353, 138 Cal. Rptr. 586), finding that the defendant had caused an effect in the State by an act or omission outside the State. The court held that it was reasonable to exercise jurisdiction over the defendant because he had purposely availed himself of the benefits and protection of the laws of California by sending the one daughter to live with her mother in California. The United States Supreme Court held that by sending the one daughter to California the defendant had not purposely availed himself of the benefits and protection of California laws and thus he did not have the required minimum contact with that State to confer upon it the power to assert personal jurisdiction over him.

The court also noted that an essential criterion of jurisdiction is whether the "quality and nature" of the defendant's activities are such that it is reasonable and fair to require him to conduct his defense in that State. The court found that "basic considerations of fairness" decidedly favored the State of the defendant's domicile as a proper forum since he had remained in the State of the marital domicile, whereas the wife had moved across the continent. The single act of permitting the child to live with its mother in California was not such as to cause a reasonable parent to believe that he would be required to

litigate a child-support case 3,000 miles away. The court stated:

"It cannot be disputed that California has substantial interests in protecting resident children and in facilitating child-support actions on behalf of those children. But these interests simply do not make California a 'fair forum' [citation] in which to require appellant, who derives no personal or commercial benefit from his child's presence in California and who lacks any other relevant contact with the State, either to defend a child-support suit or to suffer liability by default." 436 U.S. 84, 100-01, 56 L. Ed. 2d 132, 146-47, 98 S. Ct. 1690, 1701.

In light of *Kulko* we need not decide whether the failure to pay child-support money constitutes the commission of a tortious act in Illinois. (See *Mroczynski v. McGrath* (1966), 34 Ill. 2d 451.) Whether the jurisdictional requirement involves the commission of a tortious act or whether, as in *Kulko,* it requires that the defendant cause an effect in the State by an act done elsewhere, under the facts of our case, as in *Kulko,* the quality and nature of the defendant's activities in Illinois were not such that it would be reasonable and fair to require him to conduct his defense here. Also, as in *Kulko,* the defendant in our case derived no commercial or personal benefit from the presence of his children or his ex-wife in Illinois; thus, the facts of our case support neither the reasonableness-and-fairness test nor the minimum-contact criterion of due process.

The plaintiff in this court attempts to distinguish *Kulko* by saying that that case did not involve a suit for nonpayment of support money, which is the alleged tortious act, and plaintiff further argues that, in fact, *Kulko* supports the appellate court opinion in this case, which held that the commission of the tortious act would

support jurisdiction over the defendant only for the purpose of recovering arrearages in support payments (the tortious act being the failure to make the payments), and would not support an action to modify the divorce decree. Neither the language nor the holding in *Kulko* is that limited. In our case the defendant's contact with Illinois was not as extensive as were the husband's contacts with California in *Kulko* and, as in that case, the husband here derived no commercial or personal benefit from his children's presence in this State. As in *Kulko,* the defendant here did not have the necessary minimum contacts with this State.

Also, the quality and nature of the defendant's activities are not such that it would be reasonable and fair to require him to defend an action here. As in *Kulko,* the husband has remained in the State of the marital domicile and also the State in which the divorce decree was entered. The wife is the one who moved to Illinois. As noted in *Gray,* an orderly and fair-administration of the law requires protection against being compelled to answer claims brought in distant States with which the defendant has little or no association, and in which he would be faced with an undue burden in making his defense, keeping in mind that lawsuits can be brought on frivolous demands and groundless claims. It should not lie within the choice of the plaintiff to engage in "forum shopping," nor should the defendant be required to defend in any and all jurisdictions wherein the wife may choose to maintain her action.

The plaintiff is not left at a severe disadvantage in the collection of delinquent support payments by being deprived of the right to maintain an action in Illinois. *Kulko* specifically referred to this problem and noted that the Uniform Reciprocal Enforcement of Support Act would afford the wife a means of litigating her claim without returning to the State of the husband's residence,

or the State wherein the divorce decree was entered. 436 U.S. 84, 100 n.15, 56 L. Ed. 2d 132, 146 n.15, 98 S. Ct. 1690, 1701 n.15; see Ill. Rev. Stat. 1977, ch. 40, par. 1201 *et seq.*

For these reasons we reverse the judgment of the appellate court insofar as it held that the circuit court of Madison County had jurisdiction over the defendant for purposes of maintaining an action to recover the arrearages in support and alimony payments. That portion of the appellate court's judgment which holds that the circuit court of Madison County did not have jurisdiction of the defendant for the other relief sought is affirmed. The order of the circuit court quashing service of process on the defendant is affirmed.

*Appellate court affirmed in part and reversed in part; circuit court affirmed.*