435 So.2d 387 (1983)
Roger HODGE, Appellant,
v.
Adrienne MAITH, Appellee.
No. 82-1382.
District Court of Appeal of Florida, Fifth District.
July 28, 1983.
*388 Jeffrey J. Fitos, Ocala, for appellant.
Gordon G. Oldham, Jr., State Atty., Fifth Judicial Circuit and Martin J. Campbell, Asst. State Atty., Tavares, for appellee.
FRANK D. UPCHURCH, Jr., Judge.
Roger Hodge appeals from an order adjudicating him to be the father of Adrienne Maith's two children and ordering him to pay temporary support.
In October, 1980, Maith instituted suit against Hodge in Philadelphia County, Pennsylvania under the Uniform Reciprocal Enforcement of Support Act (URESA). Hodge resides in Marion County, Florida and Maith's petition was filed in Marion County Circuit Court by the state attorney, pursuant to chapter 88, Florida Statutes.
Hodge filed an answer denying that he is the father of the two children and the Marion County Circuit Court subsequently entered an order continuing the case for six months to allow the State of Pennsylvania to establish paternity.
Hodge was served by certified mail with notice of the paternity action in that state and he filed two motions to dismiss for lack of jurisdiction. In these motions, he alleged that he is a permanent resident of Florida and has had no contacts with Pennsylvania.[1]
Trial was held in Philadelphia County Family Court and a default judgment on the issue of paternity was entered against Hodge who failed to appear. The State of Florida then moved to enforce this judgment in Marion County Circuit Court and Hodge moved to have it vacated. The lower court accorded the judgment full faith and credit and ordered Hodge to pay temporary support.
Two questions are presented for review in the context of the overriding issue which is whether the Marion County Circuit Court was bound under the full faith and credit clause of the United States Constitution[2] by the finding of paternity made by the Pennsylvania court. The first question is whether Maith properly brought the instant action under the Uniform Reciprocal Enforcement *389 of Support Act (URESA), chapter 88, Florida Statutes (1981). The second question is whether, assuming the action was properly initiated, resolution of the paternity issue by the Pennsylvania court violates URESA and/or the due process clause of the Fourteenth Amendment.
As to the first question, it is clear that Maith's action was properly brought under URESA. It is true that in Kendrick v. Everheart, 390 So.2d 53 (Fla. 1980), the Florida Supreme Court declared that chapter 742, Florida Statutes (1981),[3] is a natural mother's exclusive legal remedy in establishing paternity and enforcing support rights on behalf of her child.[4] However, Maith was not required to personally come to Florida to institute a paternity and support action against Hodge since Florida has adopted URESA in chapter 88, Florida Statutes.
The purpose of URESA is to enable a dependent in one state to initiate proceedings in the state of her domicile for the purpose of securing money for support from a person residing in another state who is legally liable for the support of such dependent. State ex rel Arvayo v. Guerrero, 21 Ariz. App. 173, 517 P.2d 526 (1974); Lambrou v. Berna, 154 Me. 352, 148 A.2d 697 (1959). URESA creates no duty of support but simply provides a means for enforcing a duty of support as that duty may exist under the law of the responding state. Ray v. Pentlicki, 375 So.2d 875 (Fla. 2d DCA 1979).[5] This duty of support may be enforced in any responding state where jurisdiction over the father can be obtained. Johnson v. Ross, 405 N.E.2d 569 (Ind. App. 1980); Vigil v. Vigil, 30 Colo. App. 452, 494 P.2d 609 (1972).
In People of State of Arkansas v. Smith, 398 So.2d 512 (Fla. 2d DCA 1981), the Second District Court of Appeal recognized, at least by implication, that a non-resident mother could bring an action under URESA in this state for child support and that it would be appropriate for the Florida court to decide the issues of paternity and child support, assuming the absence of a valid prior judgment on the matters from another state. Indeed, chapter 88 provides for the determination of paternity issues in appropriate cases. § 88.235, Fla. Stat. (1981).
It is clear therefore that while chapter 742 provides the exclusive remedy for a natural mother in establishing paternity and enforcing support rights on behalf of her child, where a non-resident mother is involved and the putative father resides in this state, URESA may be used to institute an action against the putative father in Florida to enforce support duties and a determination of paternity may be made in the context of such an action. Since such an action is in reality pursuant to chapter 742, however, the requirements of that section, such as personal service on the putative *390 father when the complaint is filed in circuit court, must be complied with. See Drucker v. Fernandez, 288 So.2d 283 (Fla. 3d DCA 1974); T.J.K. v. N.B., 237 So.2d 592 (Fla. 4th DCA 1970). Here, the record does not reveal that personal service of process was made upon Hodge. However, even if Hodge was properly served, we believe that resolution of the paternity issue by the Pennsylvania court was improper under URESA and/or the due process clause of the Fourteenth Amendment.
Had the Pennsylvania court's determination of paternity constituted a valid, prior resolution of that issue, then the circuit court would have been required to give full faith and credit to that judgment and the issue could not be further litigated in this state. People of State of Arkansas v. Smith. See also People ex rel Franks v. Franks, 126 Ill. App. 51, 261 N.E.2d 502 (1970) (where Illinois is responding state under URESA and duty to support has been established by judgment in a sister state, Illinois court cannot redetermine the issue). However, full faith and credit need not be given to a judgment invalid in Florida by virtue of being offensive to the due process clause of the Fourteenth Amendment. Grover & Baker Sewing Machine Co. v. Radcliffe, 137 U.S. 287, 11 S.Ct. 92, 34 L.Ed. 670 (1890); Lanigan v. Lanigan, 78 So.2d 92 (Fla. 1955).
As noted previously, under URESA, the petitioner need not return to the state of the respondent's domicile in order to enforce support obligations. Rather, the petitioner need only file a verified motion for support in the appropriate court of any state in which the petitioner resides. § 88.111, Fla. Stat. If the initiating court finds that the motion is sufficient and that a court of the responding state may obtain jurisdiction of the respondent or his property, it shall send a copy of the petition to the responding state. § 88.141, Fla. Stat. This has the effect of requesting the responding state to obtain jurisdiction over the respondent. § 88.181, Fla. Stat. If jurisdiction is obtained, a hearing is set in the responding state at which the respondent may contest the claim. §§ 88.181, 88.193, Fla. Stat. If the petitioner is not present and the respondent denies owing a duty of support, the court shall upon the request of either party:
[C]ontinue the hearing to permit evidence relative to the duty to be adduced by either party by deposition or by appearing in person before the court. The court may designate the judge of the initiating court as a person before whom a deposition may be taken.
§ 88.193, Fla. Stat. The responding court may thereafter determine whether the respondent owes a duty of support. § 88.211, Fla. Stat.
In Clarke v. Blackburn, 151 So.2d 325, 329 (Fla. 2d DCA 1963), the Second District Court of Appeal explicitly held that under URESA, where Florida is the responding state, "[t]he question as to whether or not [the respondent] has a duty to support his allegedly illegitimate child must be determined according to the laws of the State of Florida and by the courts of this state." (emphasis added) The state argues that this language in Clarke v. Blackburn is of no further effect in light of section 88.235 which was added to chapter 88 in 1979 and provides:
Paternity
If the respondent asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and if both of the parties are present at the hearing or the proof required in the case indicates that the presence of either or both of the parties is not necessary, the court may adjudicate the paternity issue. Otherwise, the court may adjourn the hearing until the paternity issue has been adjudicated. (emphasis added).
In providing that "the court may adjudicate the paternity issue", this section does not specifically authorize the court of the initiating state to make such an adjudication. See section 88.031(1) for definition of "court" when used in chapter 88 ("[M]eans the circuit court of this state and when the context requires, means the court *391 of any other state as defined in a substantially similar reciprocal law"). While it does permit the court of this state to "adjourn the hearing until the paternity issue has been adjudicated" and hence may contemplate an adjudication in the initiating state, it is clear that in any event the court in the initiating state must have jurisdiction over the non-resident respondent in order to enter a valid judgment against him. It is also clear that URESA does not grant in personam jurisdiction over a non-resident party not otherwise subject to the power of the initiating state's courts. Fitzwater v. Fitzwater, 294 N.W.2d 249 (Mich. App. 1980).
The state argues that Pennsylvania had jurisdiction over Hodge pursuant to its long arm statute which encompasses the nonpayment of money by a non-resident which is owed and the lack of which causes harm within Pennsylvania. Rogers v. Rogers, 295 Pa.Super. 160, 441 A.2d 398 (1982). However, even if Hodge may be reached under the wording of Pennsylvania's long-arm statute, the remaining question is whether the exercise of jurisdiction comports with constitutional standards.
In order to obtain proper jurisdiction over the person of the defendant, there must be adequate notice of the action given to the defendant, Mullane v. Central Hanover Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950) and a sufficient connection between the defendant and the forum state as to make it fair to require defense of the action in the forum. Milliken v. Meyer, 311 U.S. 457, 61 S.Ct. 339, 85 L.Ed. 278 (1940). Even assuming that notice in this case of the Pennsylvania proceedings was adequate, Hodge's connections with that state are too insubstantial to support in personam jurisdiction on a constitutional level.
To subject a party to in personam jurisdiction, certain "minimum contacts" within the territory of the forum must be shown so that maintenance of the suit does not "offend traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In the instant case, the record reveals no such minimum contacts and Hodge in his motion to dismiss filed in the Pennsylvania proceeding alleged that he is a permanent resident of Florida and "has had no contacts with the State of Pennsylvania." Maith did not allege in her petition that Hodge was ever in Pennsylvania, see Rogers v. Rogers,[6] and indeed the record reveals that the two children involved were born in New York City.
Numerous recent cases involving child support matters have held that the due process clause of the Fourteenth Amendment prohibits a state from entering a binding judgment against a non-resident obligor because the quality and nature of his activities in the state make it unreasonable and unfair to require him to conduct his defense in that state. Kulko v. Superior Court of California, 436 U.S. 84, 98 S.Ct. 1690, 56 L.Ed.2d 132 (1978);[7]Landis v. Kolsky, 81 N.J. 430, 409 A.2d 276 (1979); Boyer v. Boyer, 73 Ill.2d 331, 22 Ill.Dec. 747, 383 N.E.2d 223 (1978). Indeed, to paraphrase from Kulko, while it is undisputed that Pennsylvania has a substantial interest in protecting resident children and facilitating *392 child support actions on their behalf, these interests simply do not make it a fair forum in which to require Hodge, who from the record before us, derives no personal or commercial benefit from his alleged children's presence in Pennsylvania and who lacks any other relevant contact with the state, either to defend a child support suit or suffer liability by default. 98 S.Ct. at 1701. Pennsylvania's and Maith's interests can be adequately served by proper application of URESA which, under the circumstances of this case, requires that the Florida court which has (or may obtain) personal jurisdiction over Hodge, resolve the issues of paternity and child support.
REVERSED.
ORFINGER, C.J., and COBB, J., concur.
NOTES
[1] In Maith's pleadings, she alleged that the children were born in New York City.
[2] Article IV, § 1, United States Constitution.
[3] Chapter 742 entitled "Determination of Paternity" delineates the procedures for establishing the paternity of a child and provides that "Any unmarried woman who shall be pregnant or delivered of a child may bring proceedings in the circuit court, in chancery, to determine the paternity of such child." § 742.011, Fla. Stat. (1981).
[4] See also § 742.10, Florida Statutes, which provides:

This chapter shall be in lieu of any other proceedings provided by law for the determination of paternity and support of children born out of wedlock.
[5] While URESA does not create a duty of support, it is not necessary that an action under the Act be based on a pre-existing judicial determination of support duty. This is because under the Act, as adopted in Florida, "duty of support" is broadly defined to include "a duty of support whether imposed or imposable by law or by order, decree, or judgment of any court, whether interlocutory or final or whether incidental to an action for dissolution of marriage, separation, separate maintenance or otherwise... ." § 88.031(3), Fla. Stat. (emphasis added). In construing a similar provision, the court in Banks v. McMorris, 47 Cal. App.3d 723, 727, 121 Cal. Rptr. 185, 188 (1975) declared:

[It is not] only orders of support of one state [that] will be enforced under the Act. In fact, it is `all duties' and the duty, of course, may grow out of the order of support or a judgment or decree but is equally a duty if it never has received judicial attention and now is the basis of litigation for the first time under the Act.
See also Johnson v. Ross, 405 N.E.2d 569 (Ind. App. 1980).
[6] In Rogers, the Pennsylvania court held that the fact that a non-resident husband had some years earlier moved his family to Pennsylvania and lived with them there for some six years before abandoning them and cutting off their support provided sufficient contacts to permit Pennsylvania courts to exercise in personam jurisdiction over him. In the instant case, however, Hodge maintains he has had no contacts with Pennsylvania and there is no evidence in the record to the contrary.
[7] In Kulko, a husband and wife were domiciled in New York when the wife moved to California after a separation. A separation agreement provided that the two children would reside with the father and spend vacations with the mother, though eventually both children were to live with the mother. The wife sued in California seeking full custody of the children and increased support but the husband claimed that California lacked "minimum contacts" to justify its jurisdiction. The Supreme Court agreed, noting, inter alia, that the husband did not purposefully derive benefit from any activities relating to the State of California and that it was he who remained in the state of the marital domicile while the wife moved across the continent.