*In re* MARRIAGE OF PAULA KRAMER, Petitioner-Appellant, and RONALD J. KRAMER, Respondent-Appellee.

Fourth District   No. 4—91—0544

Opinion filed March 19, 1992.

Thomas M. Goodwin, of Dougherty, Hofmann & Goodwin, P.C., of Danville, for appellant.

Randall Ray, of Sebat, Swanson, Banks, Garman & Townsley, of Danville, for appellee.

JUSTICE LUND delivered the opinion of the court:

This is an appeal from an order of the circuit court of Vermilion County denying registration of a foreign judgment for arrearage in child support. Defendant was served with the South Dakota petition and process in Illinois, but no pleading was filed in response. The South Dakota court entered a default judgment in the amount of $45,683.23, of which roughly $34,000 represented interest and penalties under South Dakota statute. Jurisdiction over the Illinois defendant was based on a South Dakota long-arm statute, which provides personal jurisdiction over any person who fails to support his minor child residing within the State. The Vermilion County circuit court refused to recognize South Dakota's jurisdiction over the Illinois defendant, holding that defendant lacked sufficient minimum contacts with the State of South Dakota to support the exercise of personal jurisdiction.

The parties were married in South Dakota on January 21, 1971, and lived there until shortly after the birth of their child in June of the same year. In October 1972 they moved to California, where they lived until their separation in August 1973. Petitioner then moved to

Nebraska and was granted a decree of divorce there in January 1974. The decree ordered respondent to pay $100 per month in child support until the child either married, became 19 years of age, or became self-supporting.

In 1974, petitioner brought an action in the Nebraska courts under the Revised Uniform Reciprocal Enforcement of Support Act (see Neb. Rev. Stat. §§42—762 through 42—7,104 (1988)), to compel performance under the divorce decree in California where respondent Ronald Kramer was still living. The California responding court reduced support payments to $50 per month and changed the duration of payments to when the child attained 18 years of age. Respondent was ordered to make payments directly to the Sacramento County district attorney's office. Although respondent fully complied with this order, the original Nebraska support decree was never modified to reflect the reduction in child support.

The record does not specify the date petitioner Paula Kramer returned to South Dakota, but there is documentation that she resided there as of December 1983. Respondent never directed or encouraged petitioner to move there, nor has he ever returned to South Dakota since leaving in 1972. Over the years, respondent exchanged personal correspondence with his daughter and, on one occasion, arranged for her to visit him in Illinois for one week.

On September 24, 1990, over one year after the child attained majority, petitioner filed her action for the unpaid portion of child-support payments under the original Nebraska support decree. Respondent filed no appeal from the resulting default judgment. A petition was filed on April 16, 1991, in the Fifth Judicial Circuit of Illinois for registration of the foreign judgment under section 12—603 of the Code of Civil Procedure (Code) (Ill. Rev. Stat. 1989, ch. 110, par. 12—603). Respondent opposed registration of the foreign judgment on the basis that the South Dakota court had lacked personal jurisdiction, and the trial court agreed.

■ The conclusiveness of a foreign judgment is governed by section 12—621(a) of the Code, which reads, in relevant part:

"Inconclusiveness of Judgments. (a) A foreign judgment is not conclusive if

***

(2) the foreign court did not have personal jurisdiction over the defendant." Ill. Rev. Stat. 1989, ch. 110, par. 12—621(a)(2).

■ "Section 37 of the Restatement (Second) of Conflicts of Laws (1971) provides that a State may exercise jurisdiction over a person 'who causes effects in the state by an act done elsewhere,' *** 'unless

the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.' " (*Boyer v. Boyer* (1978), 73 Ill. 2d 331, 335, 383 N.E.2d 223, 224, quoting Restatement (Second) of Conflicts of Laws §37 (1971).) This element of reasonableness must be reviewed in light of the United States Supreme Court's decision in *International Shoe Co. v. Washington* (1945), 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, which requires that a nonresident defendant have certain minimum contacts with the State attempting to assert jurisdiction so that the action does not offend traditional notions of fair play and substantial justice. These restrictions on State jurisdiction over nonresidents "are more than a guarantee of immunity from inconvenience or distant litigation (the fairness and reasonableness criteria); they are a consequence of territorial limitation on the power of the respective States." (*Boyer*, 73 Ill. 2d at 337, 383 N.E.2d at 225; also see *Hanson v. Denckla* (1958), 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228.) "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson*, 357 U.S. at 253, 2 L. Ed. 2d at 1298, 78 S. Ct. at 1240.

The Supreme Court considered a similar case in *Kulko v. Superior Court* (1978), 436 U.S. 84, 56 L. Ed. 2d 132, 98 S. Ct. 1690. In *Kulko*, the parties were married in California while defendant father was on a three-day stopover en route to military service. Both husband and wife were residents of New York. Following the marriage the wife returned to New York, as did the husband after returning from military service. Two children were born in New York. A subsequent divorce decree executed in New York provided the father with custody of the children during the school year and custody with the mother in California during vacation. The agreement also provided for child support. Later, one child expressed a desire to live with her mother and the father bought her a one-way plane ticket to California. Later still, the other child informed the mother of his desire to live with her in California and the mother sent him a plane ticket.

In a suit brought in California to modify the New York divorce decree, the Supreme Court held that California could not exercise jurisdiction over the nonresident father. By sending the one daughter to California, defendant had not " 'purposely availed himself' of the 'benefits and protections' of California's laws." (*Kulko*, 436 U.S. at 94, 56 L. Ed. 2d at 143, 98 S. Ct. at 1698; *Shaffer v. Heitner* (1977), 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569.) The Court held:

"It cannot be disputed that California has substantial interests in protecting resident children and in facilitating child-support actions on behalf of those children. But these interests simply do not make California a 'fair forum,' *Shaffer v. Heitner*, [433 U.S.] at 215, [53 L. Ed. 2d at 704, 97 S. Ct. at 2585,] in which to require appellant, who derives no personal or commercial benefit from his child's presence in California and who lacks any other relevant contact with the State, either to defend a child-support suit or to suffer liability by default." *Kulko*, 436 U.S. at 100-01, 56 L. Ed. 2d at 146-47, 98 S. Ct. at 1701.

Similar to *Kulko*, respondent in the present case has had few contacts with South Dakota. He was married in South Dakota and his child was born there, but he left the State nearly 18 years ago and has never returned. His wife, a resident of California at the time of separation and Nebraska at the time of divorce, moved back to South Dakota without encouragement or direction from respondent. His sole contact with the State in the intervening years has been occasional correspondence with his daughter, which on one occasion resulted in sending her a plane ticket so that she could visit him in Illinois.

Petitioner argues that unlike the case at hand, the *Kulko* decision had no long-arm statute upon which to base the jurisdictional claim. Petitioner asserts that the South Dakota long-arm statute is purposely designed to overcome this obstacle by establishing an ascertainable minimum contact for jursidictional purposes. In support, petitioner offers the Illinois long-arm statute as proof that nonsupport of minor children in a forum State is recognized in Illinois as a basis for the exercise of jurisdiction.

■ We disagree. Illinois has followed *Kulko* in two supreme court decisions: *Boyer* (73 Ill. 2d at 340, 383 N.E.2d at 226) and *People ex rel. Mangold v. Flieger* (1985), 106 Ill. 2d 546, 550, 478 N.E.2d 1366, 1367. In each case, a resident mother argued that the nonresident father's failure to pay child support pursuant to a divorce decree constituted the commission of a tortious act within the meaning of the Illinois long-arm statute. In both cases, the courts declined to rule on the long-arm issue because they found the nonresident defendant lacked sufficient minimum contacts with Illinois to make the exercise of jurisdiction over him consistent with due process. "The fact that a defendant's acts fall within the terms of the long arm statute does not necessarily mean the exercise of jurisdiction over him is proper. Rather, the exercise of jurisdiction must be consistent with due process." *In re Marriage of Brown* (1987), 154 Ill. App. 3d 179, 185, 506 N.E.2d

727, 730, citing *Mangold*, 106 Ill. 2d 546, 478 N.E.2d 1366, and *Boyer*, 73 Ill. 2d 331, 383 N.E.2d 223.

South Dakota's long-arm statute differs significantly from our own, but we need not decide whether it meets the requirements of due process. The fact that the Illinois respondent has not purposely availed himself of the benefits and protection of South Dakota law establishes that he does not have the required minimum contacts with that State to confer upon it the power to assert personal jurisdiction over him.

We affirm.

Affirmed.

STEIGMANN and McCULLOUGH, JJ., concur.