[No. A108621. First Dist., Div. Four. Oct. 18, 2006.]

OLIVER WILLMER, Appellant, v.
KATINA WILLMER, Respondent.

COUNSEL

Law Offices of Dan G. Ryan and Dan G. Ryan for Appellant.

Bill Lockyer, Attorney General, Thomas R. Yanger, Assistant Attorney General, Paul Reynaga and Mary Dahlberg, Deputy Attorneys General, for Respondent.

OPINION

RUVOLO, P. J.—

## I.

## INTRODUCTION

Oliver Willmer (Oliver)[1] appeals from an order confirming registration of a German judgment for child and spousal support. He argues that there is no reciprocity between Germany and the United States regarding child and spousal support orders, that principles of comity do not apply, and that the German judgment is invalid because it was fraudulently obtained and the German court lacked jurisdiction over him. We affirm.

## II.

## PROCEDURAL AND FACTUAL BACKGROUND

Oliver and Katina Willmer (Katina) were both born in Germany. In 1990, they lived in Canada and were involved in a relationship. They moved to Germany in December 1990, but were married in Canada in August 1991. The couple's child was born in Germany in January 1992.

The relationship ended in October 1993, while the couple lived in Germany. Oliver indicated in his declaration that both parties were represented by German legal counsel "[i]n the ensuing days" after Katina moved out of the couple's home on October 25, 1993, and "all correspondence was exchanged via this route." During November and December 1993, Oliver sought the assistance of the German child services agency to establish visitation with his daughter. He indicated that he was "[u]nable to make arrangements to see [his] daughter . . . and settle any issues with regards to child support, recovery and division of assets," and never received "any form of divorce or support orders." Oliver returned to Canada to begin a new employment position on January 1, 1994.

On March 16, 1994, the Bad Schwalbach District Court in Germany entered a default judgment, in which it ordered Oliver to pay 465 deutsche

---

[1] Because the parties share the same last name, we refer to them by their first names, where appropriate, for clarity. (See *Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1136, fn. 1 [97 Cal.Rptr.2d 707].)

marks per month in child support, and 1,618.47 deutsche marks per month in spousal support. The judgment indicated that Oliver's present residence was "unknown."

On April 6, 2004, the Contra Costa County Department of Child Support Services (Department) filed a notice of registration of the German judgment, a prerequisite to enforcing it in California under the Uniform Interstate Family Support Act (Fam. Code, § 4900 et seq.; UIFSA).[2] Oliver resides in Contra Costa County, and was served with the pleadings. Katina and the minor live in Germany.

The related German court documents filed by the Department indicated that the parties were "[d]ivorced on . . . November 28, 1995." The support obligations were restated in euros and dollars, indicating that child support was $240.70 per month, spousal support was $837.77 per month, and that Oliver was in arrears in the amount of $116,474.76.

Oliver filed a request for a hearing to contest registration of the support order. He sought cancellation of the registration claiming that: (1) the German court had no jurisdiction over him, (2) the support order was obtained by fraud, (3) Katina had "actively hidden the child from [him] since October, 1993," and (4) the support sought included spousal support.

At the hearing on June 14, 2004, Oliver's attorney also argued that, because the March 16, 1994 German judgment stated that Oliver's residence was unknown, Oliver had not received notice and therefore his due process rights were violated. The court continued the hearing, ordered the Department to "obtain from the German court the judicial basis of the judgment or order that was entered against Mr. Willmer," and suspended enforcement of the support order pending "a determination of the validity of the judgment."

The Department obtained additional documentation from the German Central Authority, indicating that Oliver was served with the order and judgment by publication under German law. The German Central Authority also indicated that the German court had jurisdiction because the family's "last habitual residence" was in Germany.

---

[2] Unless otherwise designated, all further statutory references are to the Family Code.

In an order filed November 9, 2004 (the November 9 order), the court held that the German court had jurisdiction to enter the support order and the order was "valid and enforceable." This timely appeal followed.

## III.

## DISCUSSION

### A.

### Enforcement of Foreign Judgments

Oliver argues that the German judgment may not be enforced in California under the UIFSA because Germany is not a "foreign reciprocating country," and only the Secretary of State may declare whether a foreign country is "reciprocating" for the purpose of enforcing support orders. He also claims that the German judgment may not be enforced under principles of comity because "there is no specific authority for the . . . Family Law Court to enforce a decree for support from a foreign nation . . . ." He is mistaken.

■ The UIFSA authorizes a procedure by which a foreign judgment for child or spousal support may be enforced in California. The UIFSA was enacted in 1997, as required by the federal Personal Responsibility and Work Opportunity Reconciliation Act of 1996 (PRWORA) (Pub.L. No. 104-193 (Aug. 22, 1996) 110 Stat. 2105). The UIFSA governs, inter alia, the enforcement of child and spousal support orders from another state. (§ 4901, subd. (s).) "State" is defined to include a foreign jurisdiction "that has enacted a law or established procedures for issuance and enforcement of support orders which are substantially similar to the procedures under this chapter, the Uniform Reciprocal Enforcement of Support Act, or the Revised Uniform Reciprocal Enforcement of Support Act." (§ 4901, subd. (s)(2).) Under PRWORA, the United States Secretary of State is authorized to make federal declarations of reciprocity for child support establishment and enforcement. (Caswell, *International Child Support—1999* (1998) 32 Fam. L.Q. 525, 540.) The Secretary of State has not yet declared Germany a reciprocating country under the PRWORA (Pub. Notice 4191, 67 Fed.Reg. 71605 (Dec.

2, 2002)). Nevertheless, PRWORA provides that individual states are "expressly authorized to enter into their own arrangements with foreign jurisdictions up until such time as countries are declared foreign reciprocating countries under the Act." (Caswell, *International Child Support—1999*, *supra*, 32 Fam. L.Q. at p. 541.)

■ Section 5005 provides that the California Attorney General "may declare the foreign jurisdiction to be a reciprocating state for purposes of establishing and enforcing support obligations" when he or she is "satisfied that reciprocal provisions will be made by a foreign jurisdiction for the establishment of support orders for obligees in California, or for enforcement of support orders made within this state . . . ." (§ 5005.) Germany has enacted the Act for the Recovery of Maintenance in Relations with Foreign States as the official reciprocating act.[3] (Dehart, *Comity, Conventions, and the Constitution: State and Federal Initiatives in International Support Enforcement* (1994) 28 Fam. L.Q. 89, 97, fn. 33.) Thus, the California Attorney General has declared that the Federal Republic of Germany is a "reciprocating state." (*Id.* at pp. 96–97; see Historical Note, 19A West's Ann. Code Civ. Proc. (1982 ed.) foll. former § 1693, p. 650.)

Therefore, contrary to Oliver's contention in his brief, the UIFSA authorizes enforcement of a foreign judgment for child or spousal support in California, and Germany is a reciprocating state for purposes of the UIFSA. Consequently, the German judgment is enforceable under the provisions of the UIFSA.

**B.**

**Validity of German Support Order**

■ Oliver next maintains that the German order is invalid because the German court had no jurisdiction over him. He also claims the order was obtained by fraud because Katina "await[ed Oliver's] leaving the country to begin proceedings against him . . . to avoid the niceties of personal jurisdiction and notice. . . ." The UIFSA provides that these two claims are grounds for challenging registration of a foreign support order. Section 4956

---

[3] The German government authorities indicated that they were cooperating with the Department under the Act for the Recovery of Maintenance in Relations with Foreign States (German Foreign Maintenance Act) of December 19, 1986.

provides that the obligor may challenge registration of a foreign support order if: "(1) The issuing tribunal lacked personal jurisdiction over the contesting party. [¶] (2) The order was obtained by fraud." (§ 4956, subd. (a)(1), (2).) The contesting party "has the burden of proving" these defenses. (§ 4956, subd. (a).)

Oliver argues the trial court erred in finding that the German court had jurisdiction over him, claiming he is neither a German resident nor a German citizen. He also asserts that the German court had no jurisdiction over him because his "habitual . . . residence" was not in Germany.

The German Central Authority provided documentation regarding personal jurisdiction in family support matters under German law. Under section 640a of the German Code of Civil Procedure, German courts have jurisdiction if "one of the parties is German or has his/her habitual place of residence in Germany." The German court also has jurisdiction "in the judicial district of which the child has its legal domicile" or, if the child has no legal domicile, "its habitual place of residence in Germany." In this case, the German authorities found that "the family had [its] last habitual residence in Germany." (*Ibid.*)

Oliver asserts that there was no proof that his "temporary" residence in Germany satisfied the "habitual residence" standard of German law, claiming that "at the time the judgments were entered he had left the country of Germany and was no longer a resident there." Oliver does not indicate what the German standard is regarding "last habitual residence," or why it was not satisfied. In the trial court, his attorney stipulated that Oliver and Katina were living together in Germany when their child was born, and he concedes that the couple lived there for over two years, and that they last resided there as a family. Accordingly, the German authority's findings are supported by substantial evidence.

Even if the "habitual residence" requirement was not met, the German court had other bases for jurisdiction: Katina was and is a German citizen, their child resides in Germany, and Oliver was born in Germany and held German and Canadian citizenship. Oliver claims only that he is "no longer a German citizen," and nowhere disputes that he was born in Germany and held German and Canadian citizenship at the time the proceedings in Germany were initiated or the German order and judgment was entered.

Moreover, he does not dispute Katina's German citizenship, nor his daughter's legal residence or domicile. As noted above, any of these alone are sufficient under German law to sustain a basis for jurisdiction.

■ Alternatively, Oliver claims that, under *Kulko v. California Superior Court* (1978) 436 U.S. 84 [56 L.Ed.2d 132, 98 S.Ct. 1690], the German law regarding personal jurisdiction did not comport with fair play and substantial justice, because he had not committed any "purposeful act" in Germany. In *Kulko*, the court held that California courts could not exercise jurisdiction in a child support modification proceeding over Kulko. Kulko's only contacts with California were marrying his former wife in California during a three-day layover while en route to military service, and his acquiescence in sending the couple's daughter to live with her in California. (*Id.* at pp. 86–87.) Oliver, however, was a German citizen who had been residing and working in Germany for over two years, was married to a German citizen, and had a child who was born and residing in Germany. He has failed to meet his burden of proving that the German court had no jurisdiction over him under its own laws, or that Germany's assertion of jurisdiction offends traditional notions of fair play and substantial justice.[4]

Oliver also challenges the service by publication in Germany, claiming that "nowhere in the German judgment and orders do they show what was done to comply with the law or service . . . or what evidence was submitted to 'prove up' this 'fact.' " At oral argument, counsel for Oliver argued that jurisdiction was defective because the records received from the German court did not contain the evidence on which it relied in allowing service on Oliver by publication.

At the outset, we note that Oliver has not referred to any legal authority that would require the production of such evidence as a condition for establishing the validity of a foreign judgment, particularly where the documents produced facially indicate that the court had made the requisite finding of the propriety of service by publication under German law. Furthermore, we see no reason that the German court's findings and orders should not have attached to them the same presumption of regularity that is afforded courts in this jurisdiction: "Judgments and orders of the lower courts are presumed to be correct on appeal. [Citation.]" (*In re Marriage of Cohn* (1998) 65 Cal.App.4th 923, 928 [76 Cal.Rptr.2d 866].) "We imply all findings necessary

---

[4] At oral argument, counsel for Oliver conceded that under German law, there were sufficient minimum contacts to maintain jurisdiction.

to support the judgment, and our review is limited to whether there is substantial evidence in the record to support these implied findings. [Citations.]" (*Ibid.*; see also *People v. Francis* (2002) 98 Cal.App.4th 873, 878 [120 Cal.Rptr.2d 90].)

 Indeed, it was Oliver's burden to demonstrate a lack of jurisdiction based on inadequate notice. It is the obligor's burden to prove one of the defenses set forth in section 4956, subdivision (a). (§ 4956, subd. (a); Hogoboom & King, Cal. Practice Guide: Family Law (The Rutter Group 2006) ¶ 18:767, p. 18-214 (rev. #1, 2004).) The evidence offered by Oliver in this regard consisted of his declaration filed in response to the "Notice of Registration of Out-of-State Support Order." In it, Oliver states that "I was never served with any papers regarding my 'divorce' from petitioner nor was I ever served any papers regarding support, either her seeking support or my being ordered to pay. She knew where I was because I had communicated with her parents who were in communication with her. She also knew that . . . December 31, 1993 was my last day in Germany and that I was going to return to Canada and be living with my parents. She knew I worked for Siemens in Canada."

Oliver also admits in his declaration that, "In the ensuing days [after his wife moved out on October 25, 1993] both parties assumed legal [counsel] and all correspondence was exchanged via this route." Oliver stated that he "contacted the local child services agency (Jugendamt) during the months of November and December 1993 to seek assistance in possibly arranging to see my daughter. The agency was willing to try and assist. . . . My wife claimed that she had no time in her schedule to meet with me until some time in January 1994 although to our knowledge and as per her legal [counsel] she was still residing locally . . . ." Oliver indicates that, "[u]nable to make arrangements to see my daughter since Oct. 24th, 1993 and settle any issues with regards to child support, recovery and division of assets, I returned to Canada on January 1st, 1994 to assume my new position at Siemens Canada Ltd."

Oliver acknowledges traveling to Germany in 1999, at which time "the immigration officer informed me that there was some sort of inquiry as to my current whereabouts [and] requested that I provide my current address in Canada. I provided the address as requested and was free to proceed. . . . [T]he immigration officer could not provide me with details[,] however[,]

stated that it was some sort of filed [*sic*] inquiry in their computer system. There was no follow-up to this issue nor did I ever receive any correspondence at the home address which I provided."

The March 16, 1994 order of the German court indicated that Oliver's "residence at present is unknown." Karl Hansen of the German Central Authority explained, in an e-mail sent to the Department's counsel, that "[b]efore the [German] court can start the hearing upon the merits he has to make proof if all parties have been summon[e]d with the documents that instituted the proceedings and to enter this declaration into the minutes of the hearing. It is only possible to continue and to make an order if the result is, that all parties have been duly summon[e]d. . . . [¶] The orders I sent to you are valid and enforceable under German guidelines and the petitioner and the child can duly claim the support."

The documentation from the German court indicated that Oliver had been served by publication. A document which appears to be a minute order of the German court dated March 16, 1994, indicates that "It is found that the defendant has been summoned to the hearing today by means of service by public notice and has not appeared." Service by publication is authorized under German law where: "[(1)] a person's address is unknown and service on a representative or person [authorized] to receive service is not possible, [(2)] service abroad is impossible or unlikely to succeed. . . ."

Mr. Hansen of the German Central Authority provided a copy of a letter from Katina to Department's counsel.[5] In the letter, Katina states that "My lawyer Heinz Achim Jung filed for divorce on 28 October 1993. On 29 October 2003 Mr. Jung received a letter from my husband's lawyer Horst Wondra, . . . stating that he received the divorce notice and that Mr. Wondra would be the legal representative for my husband. . . . [¶] By January 1994

---

[5] Oliver's counsel objected to admission of Katina's letter on the basis that it was unsworn and hearsay. The Department offered to submit the information in the letter in the form of a declaration by Katina, and did so on October 28, 2004. The court made no ruling on Oliver's objections to the letter, either at the hearing or in its November 9 order. Instead, in the November 9 order, the court refused to admit Katina's declaration, which set forth the same facts as in her letter, and the declarations of her parents, because they were filed after the October 5, 2004 hearing and were not provided to Oliver. Oliver does not raise the issue of admissibility of Katina's letter in his opening brief, thereby waiving it. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 200, fn. 10 [10 Cal.Rptr.3d 154].) Moreover, the court could have properly admitted it as an exception to the hearsay rule to show Katina's state of mind. This was at issue in regard to her knowledge of Oliver's whereabouts and Oliver's allegation that she intended and planned to obtain the judgment by fraud. (Evid. Code, § 1250.)

my husband disappeared, we have tried several times to find out his address, even through the residents registration office, without any luck. On 21 February 1995, my lawyer Mr. Jung sent a letter to Mr. Small, of Siemens Electric [Ltd.] Mississauga, Ontario, Canada requesting information on the whereabouts of Oliver Willmer. Siemens never responded." Katina indicated in this letter that she eventually located Oliver's address in the United States by doing an Internet search in 2001.

Oliver has not met his burden of proving that the German court lacked jurisdiction over him based on its service on him by publication. He admits that he was represented by counsel in Germany in the "ensuing days" after Katina vacated their home, and that his attorney communicated with Katina's attorney. He also states that, "[u]nable to make arrangements to see my daughter . . . and settle any issues with regards to child support, recovery and division of assets, I returned to Canada on January 1st, 1994 to assume my new position at Siemens Canada Ltd." We can infer from these statements that Oliver was aware of the proceedings against him in Germany before he left the country. He acknowledges that they were unable to resolve the issues of child support and division of assets before he left for Canada. Moreover, while the evidence suggests that Katina knew Oliver planned to return to Canada, there is no evidence demonstrating that Katina had actual knowledge of his address in Canada, and indeed the evidence indicates that attempts were made to determine his address there. Oliver has not met his burden of demonstrating that the German court lacked jurisdiction over him on any basis.

## C.

### Estoppel to Enforcement Based on Concealment

Oliver's final assertion is that, because he claims Katina "secret[ed]" herself and their child in Germany and then "await[ed his] leaving the country to begin proceedings against him," Katina is estopped from enforcing the German judgment.

Oliver relies on *In re Marriage of Damico* (1994) 7 Cal.4th 673 [29 Cal.Rptr.2d 787, 872 P.2d 126], for the proposition that one parent's active concealment of a child is a defense to nonpayment of support by the other

parent. Acknowledging that "if the active concealment ends while the child is still a minor, there can be no estoppel as a defense," he nevertheless claims that estoppel applies here because he had no knowledge of the support judgment.

In *In re Marriage of Comer* (1996) 14 Cal.4th 504 [59 Cal.Rptr.2d 155, 927 P.2d 265], the court held that "a custodial parent's concealment of himself or herself and the child, which concealment ends when the child is still a minor, does not establish a defense to an action, brought on behalf of the child, for child support arrearages." (*Id.* at p. 517, fn. omitted.) The court explained that " ' "[t]he single most important consideration in an action for support is the need of the child." ' " (*Id.* at pp. 516–517, citing *In re Marriage of Lippel* (1990) 51 Cal.3d 1160, 1172, fn. 4 [276 Cal.Rptr. 290, 801 P.2d 1041].)

Consequently, while a custodial parent may be estopped from bringing an action to collect child support arrearages after the child reaches majority, he or she is not estopped from enforcing a judgment when concealment terminates while the child is still a minor because the child "might benefit from [the parent's] payment of child support arrearages." (*In re Marriage of Comer*, *supra*, 14 Cal.4th at p. 516.) Given this rationale, we find no support for Oliver's contention that his prior lack of knowledge of the support judgment operates to estop enforcement of it now.

Moreover, the record indicates that, while Oliver may not have had actual knowledge of the support judgment, he knew before he left Germany that legal proceedings had begun there, and that there had been no resolution of the issues before he left for Canada. Oliver's declaration in the trial court stated that Katina moved out of the couple's home in Germany on October 25, 1993, that both parties were subsequently represented by German legal counsel and all communication was accomplished through them. During November and December 1993, Oliver sought the assistance of the German child services agency to establish visitation with his minor daughter. "Unable to make arrangements to see [his] daughter . . . and settle any issues with regards to child support, recovery and division of assets," Oliver moved back to Canada to begin a new position on January 1, 1994. Oliver has failed to meet his burden of proof by establishing that the judgment was fraudulently obtained, or in demonstrating that Katina was estopped from enforcing it.

## IV.

## DISPOSITION

The order is affirmed.

Reardon, J., and Rivera, J., concurred.

On November 13, 2006, the opinion was modified to read as printed above.