DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**DARRYL SERVER,**
Appellant,

v.

**DEPARTMENT OF REVENUE** and **KERSTIN SERVER,**
Appellees.

No. 4D15-1570

[April 6, 2016]

Appeal of a non-final order from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Rosemarie Scher, Judge; L.T. Case No. 502013DR011602.

Jack B. Pugh of Pugh & Associates, P.A., West Palm Beach, for appellant.

Pamela Jo Bondi, Attorney General, and William H. Branch, Assistant Attorney General, Tallahassee, for appellee Department of Revenue.

WARNER, J.

Appellant challenges an order denying his Amended Motion to Set Aside Registration of a Foreign Order. The foreign order in question is a final judgment for unpaid child support entered by a court in Germany. Appellant claims that the German court lacked minimum contacts to establish jurisdiction over him. Appellee, the Florida Department of Revenue, claims that appellant had minimum contacts with Germany, because he married the mother of the child for whom the support order was entered in Germany in 1984, even though the child was born in the United States ten years later. We disagree that appellant had minimum contacts with Germany and reverse.

Appellant married the mother of his children in 1984, while he was stationed in Germany as a member of the United States Military. He left Germany in February or March 1985, while the mother was still pregnant with their first child, who was born in October 1985. Sometime thereafter, the mother and child moved to the United States and established the marital home in Florida. In 1995, while the mother was still in Florida,

their second child, who is the subject of the contested support order, was born.  Two years later, the mother moved back to Germany with both children.  Appellant never returned to Germany.

Sometime in 2004, the mother filed for divorce in Germany.  Appellant did not appear, nor did he contest the dissolution of marriage.  In 2011, the mother sought a judgment in Germany for support of the second child.  Appellant received papers regarding the proceedings but did not know what they were due to the fact that he was unable to read German.  He did not appear in the proceeding, and the German court rendered a final judgment for support.

When the Department moved to enforce the final judgment for support of the second child in Florida in 2013, appellant contested its domestication, claiming that the court in Germany lacked personal jurisdiction over him.  After an evidentiary hearing, the trial court denied appellant's motion, finding that Germany had personal jurisdiction and rejecting appellant's contention that it lacked minimum contacts with him.  The court found there to be minimum contacts based on the parties' marriage in Germany, nearly thirty years ago, and the conception and birth of their first child there, also nearly thirty years ago.  Appellant now challenges the trial court's order, contending that he did not have minimum contacts with Germany to support Germany's claim of jurisdiction over him.

A forum must have minimum contacts with the defendant in order to comply with the United States Constitution's due process requirements.  *EOS Transport Inc. v. Agri-Source Fuels LLC*, 37 So. 3d 349, 353 (Fla. 1st DCA 2010).  The Supreme Court has explained the minimum contacts analysis in a family law dispute:

> It has long been the rule that a valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant.  *Pennoyer v. Neff*, 95 U.S. 714, 732-733, 24 L.Ed. 565, 572 (1878); *International Shoe Co. v. Washington*, 326 U.S., at 316, 66 S.Ct., at 158.  The existence of personal jurisdiction, in turn, depends upon the presence of reasonable notice to the defendant that an action has been brought.  *Mullane v. Central Hanover Trust* Co., 339 U.S. 306, 313-314, 70 S.Ct. 652, 656-657, 94 L.Ed. 865 (1950), and [sic] *a sufficient connection between the defendant and the forum State to make it fair to require defense of the action in the forum.*

>*Milliken v. Meyer*, 311 U.S. 457, 463-464, 61 S.Ct. 339, 342-343, 85 L.Ed. 278 (1940).

*Kulko v. Superior Court of California*, 436 U.S. 84, 91 (1978) (emphasis added). *Kulko* also noted that it is the quality and nature of the contact with the forum state that must be evaluated. "Like any standard that requires a determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." *Id.* at 92. This Court has also noted that in considering whether a defendant's contacts with the forum are such that he or she can reasonably expect to be haled into court there, the circumstances must be viewed from the perspective of the defendant. *Silver v. Levinson*, 648 So. 2d 240, 243 (Fla. 4th DCA 1994).

In *Kulko,* a father challenged jurisdiction of the California courts over a petition to modify visitation and child support where the parties had married in California but never lived there as a family. *Id.* at 86-88. During their marriage, they resided in New York, but when they divorced, the mother moved to California. *Id.* at 86-87. Their two children, both born in New York, ultimately decided to live with the mother in California. *Id.* at 87-88. After they moved there, the mother petitioned to modify child custody and for support, which the father contested, claiming that he lacked minimum contacts with California. *Id.* at 88. The Supreme Court agreed with the father, finding that neither the marriage in California, nor the fact that the father allowed the children to leave New York and move to California to be with their mother amounted to sufficient minimum contacts to support jurisdiction. *Id.* at 97-98, 101.

Relying on *Kulko*, the court in *Department of Healthcare and Family Services ex rel. Heard v. Heard,* 916 N.E.2d 61 (Ill. App. Ct. 2009), concluded that a father did not have minimum contacts with Germany where the parties were married in Denmark and lived in Germany during the father's military deployment, but then returned to the United States where their child was born. The parties lived as a family in Illinois for two years before the mother and child left for Germany. *Id.* at 63, 66. The court held that Germany had insufficient minimum contacts to support jurisdiction:

>As in *Kulko . . . ,* [the father] remained in Illinois where the family had lived for approximately two years, while [the mother] left the marital home for Germany. In addition, the acts of marrying a German citizen and living briefly in Germany as a married couple are not, by themselves, acts by

3

which [the father] purposely availed himself of the benefits of German law.

*Id.* at 66. The court noted that the father's act of failing to fulfill his duty of supporting the child while the child was living in Germany was not sufficient to constitute minimum contacts by the father with Germany. *Id.*; *see also Hodge v. Maith*, 435 So. 2d 387, 392 (Fla. 5th DCA 1983) (finding no minimum contacts where the father did not derive any personal or commercial benefit from his children's presence in Pennsylvania and lacked any other relevant contact with that state).

Another similar case in which a court found no minimum contacts is *In re the Marriage of Kramer*, 589 N.E.2d 951 (Ill. App. Ct. 1992), in which the parties married in South Dakota in January 1971 and lived there until shortly after the birth of their child the same year. *Id.* at 816. In October 1972, they moved to California, where they lived until their separation two years later, after which the mother obtained a dissolution of the marriage in Nebraska. *Id.* at 816-17. The mother and the child later moved to South Dakota, where, after the child reached the age of majority, the mother commenced an action to collect unpaid child support. *Id.* at 817. The father, who was residing in Illinois, did not appear and a final default judgment was entered against him. *Id.* When the mother sought to register the final judgment in Illinois, the father contended that South Dakota had no jurisdiction over him as he lacked minimum contacts with the state. *Id.* Applying *Kulko*, the appellate court agreed with the father, noting that he had left the state eighteen years before and had never returned. *Id.* at 819.

On the other hand, the Department relies on *Willmer v. Willmer*, 51 Cal. Rptr. 3d 10 (Cal. Ct. App. 2006), to support jurisdiction. We find this case to be factually distinguishable. There, two German citizens married in Canada, then moved back to Germany, where their child was born. *Id.* at 12. The marriage ended the next year. *Id.* The father sought the assistance of the German child service agency to develop a visitation plan with his child, then moved back to Canada and later moved to California. Meanwhile, divorce proceedings continued in Germany, resulting in a default judgment against the father. *Id.* Ten years later, when the German judgment was submitted for registry in California, the father contended that Germany had lacked jurisdiction over him because he did not have minimum contacts with the country. *Id.* at 13. The appeals court brushed the argument off, noting that the father was a German citizen, the child was born in Germany, and the family had resided there for two years. *Id.* at 14-15. It is also significant to note that the father sought the benefits

4

of German law by attempting to secure a visitation plan in Germany before he left the country. *Id.* at 16.

The facts of the present case are more like *Heard* and *Kramer* than *Willmer*. Although the parties were married and conceived their first child in Germany, appellant left before the first child's birth. Thus, the parents and the first child never resided in Germany as a family. After the mother and child migrated to the United States, the family lived together for the next ten years in Florida, where the second child was born and appellant still lives. When the mother later moved back to Germany, she did so without appellant's consent. Later, the mother divorced appellant in Germany.[1] Then, some twenty-five years after appellant left Germany, the German court sought to acquire jurisdiction over him for a judgment of unpaid child support on the *second child*, who was born in Florida.

The Department contends that the marriage in Germany, along with the conception and birth of the older child in Germany, is sufficient contact to justify the assertion of jurisdiction for the nonpayment of child support for the younger child. We disagree. Viewing the case from appellant's perspective, he left Germany twenty-five years before the action involving the failure to pay support. He established the parties' residence and domicile in Florida, where he has remained. He has not returned to Germany. The mother and children returned to Germany without his consent or encouragement. The child support action was not commenced for another fifteen years. These circumstances simply fail to establish that he could have expected to be haled into court in Germany.

For the foregoing reasons, we reverse the order denying appellant's motion to set aside registration of the German final judgment for lack of jurisdiction.

CIKLIN, C.J., and LEVINE, J., concur.

* * *

***Not final until disposition of timely filed motion for rehearing.***

---

[1] Under the divisible divorce concept, a court may dissolve a marriage without obtaining jurisdiction over one spouse if residency requirements are met, but to adjudicate other issues such as equitable distribution of assets and support, personal jurisdiction over the other spouse must be obtained. *See Marshall v. Marshall*, 988 So. 2d 644 (Fla. 4th DCA 2008).

5