(901 P.2d 1357)
No. 72,626

STATE OF FLORIDA, DEPARTMENT OF HRS on behalf of VALARIE J. PETIT, *Appellee*, v. STEVEN BREEDEN, *Appellant*.

492

Opinion filed August 11, 1995.

*Donna J. Long,* of Vernon, Retter & Long, of Concordia, for appellant.

*J. Scott Thompson,* of the Kansas Department of Social and Rehabilitation Services, of Topeka, for appellee.

Before RULON, P.J., LARSON, J., and TOM MALONE, District Judge, assigned.

LARSON, J.: This case arises from an action brought by the State of Florida Department of Health and Rehabilitative Services (FHRS) for child support enforcement under the Uniform Reciprocal Enforcement of Support Act (URESA) against Steven Breeden, a Kansas resident. After determining that Breeden was the child's father, the trial court entered a support order against him. Breeden appeals.

FHRS and Valarie J. Petit filed a petition in the circuit court of Bay County, Florida, against Breeden under URESA seeking support for F.E.P., born May 23, 1988. The petition was forwarded to Kansas and filed in October 1993 in the county of Breeden's residence. The petition sought the establishment of Breeden's paternity of F.E.P., a child support order, reimbursement of public assistance, an income withholding order, and other monetary relief. According to the petition, Valarie J. Petit has made an assignment of her rights to FHRS.

The petition alleges Breeden is the father of Valarie's child, F.E.P. Breeden and Petit were never married. At the time of F.E.P.'s birth, Valarie Petit was married to Patrick Petit, who is the child's presumed father under Kansas law. The URESA petition included a paternity affidavit of Valarie alleging that F.E.P. resembles Breeden and that she did not have sexual intercourse with any man other than Breeden during the time 30 days before and 30 days after F.E.P. was conceived. According to the affidavit, Valarie Petit married Patrick Petit when she was two months pregnant. Breeden is not named on the birth certificate. There is no indication in the record where Patrick Petit resides.

In December 1993, the trial court held a hearing at which a Kansas Department of Social and Rehabilitation Services (SRS) staff attorney represented the plaintiff and Breeden appeared without representation. The trial court ordered a blood test to determine the paternity of F.E.P. In May 1994, Breeden's attorney filed a "Motion for Best Interests of the Child Hearing." The motion contended that *In re Marriage of Ross*, 245 Kan. 591, 783 P.2d 331 (1989), required an evidentiary hearing to determine whether establishing paternity is in the best interests of the child and prohibited considering the results of a blood test until such a determination was made. Breeden also argued the trial court was without jurisdiction to determine F.E.P.'s paternity without joining the presumed father as a party. See *State ex rel. Secretary of SRS v. Stephens*, 13 Kan. App. 2d 715, 717, 782 P.2d 68 (1989).

The trial court appointed a guardian ad litem for F.E.P. and scheduled a hearing to determine whether a best interests of the child hearing was required and to resolve other pretrial issues.

At a hearing in July 1994, the guardian ad litem agreed with Breeden that a *Ross* hearing was necessary before determining paternity and that the presumed father needed to be a party to the action in order for the court to have subject matter jurisdiction, and argued Kansas was an inconvenient forum. The trial court ruled the Kansas determination of paternity had no res judicata effect between the mother and the presumed father and that no hearing was required to assess the best interests of the child. The trial court found that Breeden was F.E.P.'s father and ordered

child support, AFDC reimbursement to FHRS, and income withholding.

Breeden's appeal questions the trial court's subject matter jurisdiction and its conclusion that no best interests of the child hearing was required prior to establishing paternity for child support purposes.

*Do the provisions of the Kansas Parentage Act apply to paternity determinations authorized under URESA?*

The purpose of the URESA is to improve and extend the enforcement of duties of support by reciprocal legislation. *Thompson v. Kite*, 214 Kan. 700, 703, 522 P.2d 327 (1974).

URESA contemplates the enforcement of support obligations, even where the duty of support has not yet been judicially established because paternity remains unascertained. K.S.A. 23-476 permits the adjudication of the paternity issue in an action initiated under URESA when it states:

"If the obligor asserts as a defense that he is not the father of the child for whom support is sought and it appears to the court that the defense is not frivolous, and if both of the parties are present at the hearing or the proof required in the case indicates that the presence of either or both of the parties is not necessary, the court may adjudicate the paternity issue. Otherwise the court may adjourn the hearing until the paternity issue has been adjudicated."

Both of Breeden's arguments are founded on the same basic premise, that the substantive and procedural requirements of the Kansas Parentage Act (KPA), K.S.A. 38-1110 *et seq.*, apply to determinations of paternity in Kansas initiated under URESA. These are questions of first impression in our state.

Although URESA itself does not explicitly contemplate a best interests of the child test or notice to presumed fathers, 2 Schatkin, Disputed Paternity Proceedings § 31.10 (4th ed. 1988) has stated:

"Neither URESA nor RURESA offers a complete procedural mechanism to actually litigate the paternity case. . . .

"Because the original Act and its subsequent amendments adopt the presence of the obligor as the test to determine the choice of law to be applied, most cases will require the application of both the procedural and the substantive law of the responding state."

Courts in other jurisdictions have considered questions similar to those we confront under URESA. In *Reynolds v. Motley*, 96 N.C. App. 299, 385 S.E.2d 548 (1989), the issue was considered whether a provision of the paternity statute which required "[a] certified copy of a certificate of birth of the child shall be attached to the complaint" applied to a paternity action initiated under URESA. 96 N.C. App. at 304. That court reasoned that although URESA was a procedural mechanism for enforcement of support duties, it does not provide the substantive grounds for determining the existence of a duty of support. Consequently, North Carolina held when adjudicating the issue of paternity in a URESA action, it must look to the applicable substantive state law governing the determination of paternity.

The court went on to hold that because certified copies of the birth certificates of the alleged children/obligees were not attached to the complaint as required by statute, "we are compelled to conclude that the North Carolina court was without subject matter jurisdiction to adjudicate defendant's paternity." 96 N. C. App. at 304.

Florida considered a similar question in *Hodge v. Maith*, 435 So. 2d 387 (Fla. Dist. App. 1983). In *Hodge,* the court considered the issue of whether a URESA action requiring a determination of paternity was properly brought where the record did not show compliance with personal service of process requirements of the paternity statute. The Florida court reasoned:

"It is clear therefore that while chapter 742 provides the exclusive remedy for a natural mother in establishing paternity and enforcing support rights on behalf of her child, where a non-resident mother is involved and the putative father resides in this state, URESA may be used to institute an action against the putative father in Florida to enforce support duties and a determination of paternity may be made in the context of such an action. *Since such an action is in reality pursuant to chapter 742, however, the requirements of that section, such as personal service on the putative father when the complaint is filed in circuit court, must be complied with.* [Citations omitted]" 432 So. 2d at 389-90. (Emphasis added.)

Nebraska's Supreme Court reached a similar result in holding that an alleged father in a paternity action brought through URESA was entitled to a jury trial as he would be in a paternity proceeding

initiated pursuant to Nebraska's paternity statute. *Wahlers v. Frye*, 205 Neb. 399, 401, 288 N.W.2d 29 (1980). Nebraska reasoned that because URESA failed to provide a procedure to determine paternity, it is necessary to look to the procedure provided in the general paternity statutes.

*Wahlers* is similar to the Oregon case *Clarkston v. Bridge*, 273 Or. 68, 539 P.2d 1094 (1975). As in *Wahlers*, the issue was whether paternity cases under URESA should be tried to a jury as were other paternity cases. The *Clarkston* court held: "[W]e believe that, in the absence of an indication of legislative intent to the contrary, the procedures for establishing paternity in a support action under URESA should parallel those mandated by the legislature for establishing paternity in other support proceedings." 273 Or. at 79.

The FHRS argues that paternity determinations authorized by URESA do not have to comply with the requirements imposed on paternity determinations by the KPA under *Ross*, nor with the joinder and notice provisions of the Act. However, URESA itself provides neither the procedure nor the substantive law to determine paternity but is merely a procedural vehicle to enforce support rights secured under other provisions of state law. See K.S.A. 23-451; K.S.A. 23-452(b); K.S.A. 23-457. As the cases from other jurisdictions illustrate, the absence of a specific procedural or substantive requirement in the URESA statute does not mean that the requirements imposed by the state paternity statute will not be enforced. Both *Reynolds* and *Hodge* hold that jurisdictional requirements of a responding state's paternity statute must be satisfied in a URESA-initiated action. We hold Kansas law governing child support forms the procedural and substantive vehicle for determining whether there is any obligation to be enforced through a URESA proceeding.

Both the KPA and K.S.A. 23-476 of the URESA concern the determination of paternity. Statutes in pari materia should be read together and harmonized. *Capital Services, Inc. v. Dahlinger Pontiac-Cadillac, Inc.*, 232 Kan. 419, 422, 657 P.2d 36 (1983). It is a longstanding rule that in construing one statute relating to the same subject matter or having the same general purpose as another, both statutes may be construed together to determine the intent of the

legislature as to such subject matter or purpose. *Clark v. Murray,* 141 Kan. 533, Syl. ¶ 2, 41 P.2d 1042 (1935); *Baumann v. Excel Industries, Inc.,* 17 Kan. App. 2d 807, Syl. ¶ 4, 845 P.2d 65, *rev. denied.* 252 Kan. 1091 (1993) (when interpreting two statutes which appear to address similar subject matter, statutes should be read together and harmonized if possible). Moreover, decisions construing one statute are material in determining the rights and liabilities under the other. See *In re Habeas Corpus Application of Sweat,* 235 Kan. 570, 574, 684 P.2d 347 (1984) (Uniform Mandatory Disposition of Detainers Act cases used as precedent for Interstate Agreement on Detainers cases).

The KPA broadly states: "Proceedings concerning parentage of a child shall be governed by this act except to the extent otherwise provided by the Indian child welfare act of 1978 (25 U.S.C. § 1901 *et seq.*)." K.S.A. 38-1110(b). Under the rule of construction *expressio unius est exclusio alterius,* this statute clearly contemplates that the KPA will govern paternity proceedings authorized by URESA. See *State v. Luginbill,* 223 Kan. 15, 20, 574 P.2d 140 (1977). Moreover, as the later enactment, it will be presumed to state the legislature's intent if it cannot be reconciled with URESA. See *State v. Keeley,* 236 Kan. 555, 560, 694 P.2d 422 (1985) (older statutes must be read in light of and in harmony with newer ones, but are subordinate if the statutes conflict).

In addition, a statute complete in itself, relating to a specific thing, takes precedence over general statutes or over other statutes which deal only incidentally with the same question or which might be construed to relate to it. *Szoboszlay v. Glessner,* 233 Kan. 475, 479, 664 P.2d 1327 (1983). Unlike URESA, the KPA is complete in itself and directed specifically to determinations of parentage. These reasons substantiate and justify our holding that the KPA applies to paternity determinations initiated through the URESA. Since Breeden and Petit were never married, the nature and scope of Breeden's support obligations under Kansas law are to be determined by the KPA. See *State ex rel. Dix v. Plank,* 14 Kan. App. 2d 12, 13-14, 780 P.2d 171 (1989).

*Does the KPA permit a paternity action to be prosecuted for the benefit of FHRS through a URESA action?*

The KPA permits paternity actions to be brought in only two circumstances. First, a paternity determination may be brought by the child or by some other party on the child's behalf. K.S.A. 38-1115(a). This is not such a case. Second, a paternity action may be brought by the SRS "[w]hen authorized under K.S.A. 39-755 or 39-756." K.S.A. 38-1115(b). Those statutes allow the SRS to bring an action to enforce support rights assigned as a result of the SRS providing AFDC assistance. K.S.A. 39-755; K.S.A. 39-709(c).

Although this action is similar to that allowed by the KPA to be brought by SRS, it is not expressly permitted by the language of the KPA. The action in this case is neither brought by the Kansas SRS nor authorized by the statutes listed, but instead is brought by the FHRS through URESA.

The Kansas Legislature has not specified how paternity actions under URESA would be brought under the KPA. Nevertheless, the fundamental rule of statutory construction is that the ascertainable intent of the legislature governs. *City of Wichita v. 200 South Broadway*, 253 Kan. 434, 436, 855 P.2d 956 (1993). As noted above, the intent of the legislature is to be gleaned from reading URESA and K.S.A. 1994 Supp. 38-1115(b) together. It is clear the legislature intends that an agency of another state with an assignment of support rights similar to that which would permit the Kansas SRS to bring a paternity action may bring a paternity action as well in a URESA action.

In this case, we hold that the paternity action should be governed by those provisions of the KPA applicable to the Kansas SRS in similar circumstances. The questions for our determination are: (1) whether the trial court has subject matter jurisdiction over a paternity action brought by the FHRS when the presumed father is not given notice and an opportunity to be heard; and (2) whether a *Ross* hearing is required in actions brought by the FHRS under K.S.A. 38-1115(a) or only to those brought on behalf of the child under K.S.A. 38-1115(b).

*Does the trial court have subject matter jurisdiction over a paternity action brought to establish an order for support when the*

*presumed father is not given notice and an opportunity to be heard?*

Under the KPA, F.E.P. has a presumed father. At the time of the child's birth, Valarie Petit was married. K.S.A. 1994 Supp. 38-1114(a) provides in part:

"A man is presumed to be the father of a child if:
(1) The man and the child's mother are, or have been, married to each other and the child is born during the marriage or within 300 days after the marriage is terminated by death or by the filing of a journal entry of a decree of annulment or divorce."

Breeden argues that under *State ex rel. Secretary of SRS v. Stephens*, 13 Kan. App. 2d 715, Syl., 782 P.2d 68 (1989), the trial court lacked subject matter jurisdiction. *Stephens* held: "In a parentage determination action brought under the Kansas Parentage Act by the Secretary of Social and Rehabilitation Services and in which neither the child, the mother, nor the presumed father was made a party to the action, it is held that the district court did not have subject matter jurisdiction." The court reasoned:

"Neither the child, the mother, nor the presumed father was made a party or 'given notice of the action' as required by K.S.A. 38-1117. It is patent that each of these three has a personal stake in the outcome of the action; their interests are both personal and real. See K.S.A. 38-1111; K.S.A. 38-1121. Yet, contrary to K.S.A. 38-1117, none of the three was made a party or given notice.
. . . .
"K.S.A. 38-1117 mandates that, in a parentage determination action under facts such as those existing here, the child, the mother, the presumed father, and the alleged father each be made a party or, if not subject to the jurisdiction of the trial court, that person shall be given notice. We are satisfied and conclude that that mandate makes the inclusion of those persons as parties a prerequisite to subject matter jurisdiction. '. . . Without compliance with K.S.A. 38-1117, the district court does not have subject matter jurisdiction under K.S.A. 38-1116." 13 Kan. App. 2d at 716-17.

If *Stephens* remains valid, it appears that we would be required to hold the trial court in the present case lacked subject matter jurisdiction. The State argues that *Stephens* is no longer controlling in light of an amendment to K.S.A. 38-1117, effective July 1, 1994. L. 1994, ch. 292, § 7. K.S.A. 38-1117(b) now reads:

"In an action to establish an order for support of the child, failure to join any person as a party shall not deprive the court of jurisdiction to determine whether a party to the action has a duty to support the child and, if so, to enter an order for support."

The State argues that because the trial court's final decision was not issued until after the effective date of this statute, it controls our resolution of this issue.

The question for our determination is whether a statute which gives the court jurisdiction without the necessity of making particular people parties to an action can be retroactively applied in a pending case. A statute which makes a purely procedural change in law will be applied to cases pending at the time of the change. *Olathe Community Hospital v. Kansas Corporation Comm'n*, 232 Kan. 161, 652 P.2d 726 (1982).

Breeden has no vested right to a defense based on *Stephens*. "The legislature may . . . deprive a party of technical defenses involving no substantive equities." 16A C.J.S., Constitutional Law § 260(b). In addition, "[a]cts affecting the jurisdiction of courts relate to a matter of remedy merely, and are therefore valid, even though they are made to operate on existing and pending causes of action." 16A C.J.S., Constitutional Law § 270. Therefore, we hold K.S.A. 38-1117(b) applies retroactively and the trial court did not lack subject matter jurisdiction. In light of subsequent legislative amendments, *Stephens* is no longer controlling.

*Is a* Ross *hearing required in actions brought by the FHRS under K.S.A. 38-1115(a) or only to those brought on behalf of the child under K.S.A. 38-1115(b)?*

In *In re Marriage of Ross*, 245 Kan. 591, Syl. ¶ 5, 783 P.2d 331 (1989), the Kansas Supreme Court held:

"Prior to ordering a blood test to determine whether the presumed parent is the biological parent, the district court must consider the best interests of the child, including physical, mental, and emotional needs. The shifting of paternity from the presumed father to the biological father could easily be detrimental to the emotional and physical well-being of any child."

In *Ross*, the mother of the child filed a paternity action under the KPA alleging that a man other than her ex-husband, who paid

child support and had joint custody, was the child's biological father. The Supreme Court noted that the alleged father was unwilling to undertake the responsibilities of parenthood and the action "was brought by the mother to use as a bargaining chip against . . . the suspected biological father, to further her plan to have the child adopted by her present husband." 245 Kan. at 597. The question presented in this case is whether the *Ross* requirement of an evidentiary hearing to determine the best interests of the child prior to ordering a blood test should apply when the paternity action is brought, not on behalf of the child under K.S.A. 38-1115(a) as it was in *Ross*, but by a state agency under an assignment of rights by K.S.A. 38-1115(b).

The risks inherent in the two contexts are significantly different in some respects. An action brought under K.S.A. 38-1115(a) must, by statute, be brought on behalf of the child. The best interests of the child determination helps ensure that the child would actually want the action brought. In *In re D.B.S.*, 20 Kan. App. 2d 438, Syl. ¶ 12, 888 P.2d 875 (1995) we held: "In a paternity action, the trial court acts as *parens patriae* to determine if the child actually wants or needs to assert the right to identify his or her biological father or whether the request is brought for reasons not in the child's best interest." The *Ross* court noted: "The mere filing of a paternity action does not automatically imply that the action is in the child's best interests." 245 Kan. 591, Syl. ¶ 6. In contrast, an action filed under K.S.A. 38-1115(b) does not purport to be on behalf of the child or for his or her direct benefit. The immediate concern of K.S.A. 38-1115(b) is with reimbursement to the state treasury for assistance already provided.

In addition, the action initiated under K.S.A. 38-1115(a) in *Ross* directly involved issues of custody and visitation. The *Ross* court noted that the KPA specifically directs the court to consider the best interests of the child in custody and visitation orders. 245 Kan. at 595; K.S.A. 38-1121(c). In a case brought under K.S.A. 38-1115(b), the ultimate issue involved is support, not custody or visitation. The KPA contains no mandate that the best interests of the child be the criteria used to determine initial support.

However, and most importantly for the child's benefit, the *Ross* court also relied on the effect of a paternity determination on the existing relationship with the presumed father as a justification for requiring a best interests of the child hearing. The *Ross* court chastened: "The court has not only bastardized the child and relieved the presumed father of all necessity of support, but it has placed the obligation to support the child on the biological father, who has never had a bonding relationship with the child."

Unlike *Ross*, in this case the presumed father is not a party and had neither notice nor the opportunity to be heard. Therefore, a determination of Breeden's duty of support will not have a res judicata effect on the issue of the presumed father's legal relationship with the child, and the paternity determination will not be entitled to full faith and credit in a Florida court. See 46 Am. Jur. 2d, Judgments § 514 (res judicata applies to parties or their privies); see also *Hodge v. Maith*, 435 So. 2d at 390 ("full faith and credit need not be given to a judgment invalid in Florida by virtue of being offensive to the due process clause of the Fourteenth Amendment"). Consequentially, the Kansas determination of paternity will require Breeden to pay support, but could not be used by him as the grounds to pursue visitation or custody, and does not appear to change the rights and obligations of the presumed father.

Despite the significant difference between the action here and the action brought in *Ross*, many of the same concerns cited by the *Ross* court weigh heavily in favor of extending the requirement of a *Ross* hearing to an action initiated pursuant to K.S.A. 38-1115(b) as well. First, it will not generally be true that the determination of paternity initiated under K.S.A. 38-1115(b) will have limited collateral effects. Generally, where the mother, presumed father, and child reside in Kansas, and all interested persons are made parties, the paternity determination would be expected to have a res judicata effect and alter existing legal relationships.

Even if our paternity determination lacks legal significance to the relationship between the presumed father and the child, on a practical level it may nevertheless be devastating. As the *Ross* court noted: "Once the judge, in the interest of judicial economy, ruptures the father/child relationship, the judge cannot return the par-

ties to the position they were in prior to the blood test, no matter how wise or great his or her judicial power. That is a fact of life." 245 Kan. at 601.

The public policy of *Ross* is expressed in the broadest of terms. The *Ross* court held the KPA "requires courts to act in the best interests of the child *when imposing legal obligations* or conferring legal rights on the . . . father/child relationship. " (Emphasis added.). 245 Kan. at 597. The basic reason for our *Ross* decision would be undercut, and the protection we have deemed vital for a minor child devastated, if we fail to follow and broadly apply the *Ross* mandate. We hold a trial court is required to have a *Ross* hearing before ordering blood tests in a paternity proceeding pursuant to K.S.A. 38-1115(b).

Where, as here, that proceeding is initiated through an interstate support enforcement mechanism and the child resides in another state, the trial court must await a determination from the court of the initiating state that a blood test establishing paternity is in the best interests of the child before making its determination of paternity. *Ross* concluded: "While we realize that blood tests have already been performed in this case, the court shall not consider the results of the tests until such consideration is determined to be in [the child's] best interests." 245 Kan. at 602.

As the *Ross* court noted: "Although someone may suffer, it should never be the child, who is totally innocent and who has no control over or conception of the environment into which he or she has been placed." 245 Kan. at 602.

The trial court is reversed. The case is remanded with instructions not to consider the results of the blood test until a Florida court determines that blood testing to determine paternity is in the best interests of F.E.P.

Reversed and remanded.