(953 P.2d 245)

No. 77,908

STATE OF KANSAS, *ex rel.* SECRETARY, DEPARTMENT OF SOCIAL AND REHABILITATION SERVICES, *Appellee,* and CHIMANE D. RENO, the mother; L.M. and C.M., minor children by and through CHIMANE D. RENO, next friend, *Appellants,* v. LONNIE E. MILLER, *Defendant.*

Opinion filed February 6, 1998.

*James E. Carpenter,* of Wyandotte-Leavenworth Legal Services, of Kansas City, for appellants.

*Randy M. Barker,* of Kansas Department of Social and Rehabilitation Services, for appellee.

Before PIERRON, P.J., GREEN and MARQUARDT, JJ.

GREEN, J.: This is an appeal by Chimane D. Reno from a judgment dismissing a paternity suit against the putative father of her

two children. On appeal, Reno contends the trial court lacked subject matter jurisdiction to enter an order requiring genetic testing of her, her children, and the putative father of the two children. Additionally, Reno contends that the trial court improperly ordered genetic testing of the parties before determining whether the tests were in the best interests of the children. We disagree and affirm.

In the summer of 1996, the Kansas Department of Social and Rehabilitation Services (SRS) filed a paternity action against Lonnie E. Miller. The petition joined Reno, the mother, and L.M. and C.M., the minor children, as co-plaintiffs. The petition for paternity alleged that Miller was the father of both L.M. and C.M.

The trial court ordered genetic testing of Miller, Reno, L.M., and C.M. According to the order compelling genetic testing, SRS was the party that moved for the testing and was the only party present for the hearing. Although Miller was not present, he demonstrated his approval of the order by having signed it earlier. When the genetic testing revealed that Miller was not the biological father of L.M. and C.M., the trial court dismissed the paternity action against him.

Reno first argues that because she was not given notice of the action, the trial court lacked subject matter jurisdiction to make any rulings in the case. To address this issue, we must consider K.S.A. 38-1116. K.S.A. 38-1116(a) states that the trial court will have jurisdiction when an action is brought under the Kansas Parentage Act (KPA), K.S.A. 38-1110 *et seq.* The petition for paternity clearly states that this action was filed under K.S.A. 38-1110 *et seq.*, K.S.A. 39-709, K.S.A. 39-718b, K.S.A. 39-755, and K.S.A. 39-756. Therefore, under K.S.A. 38-1116, if this action was properly brought under the KPA, the trial court had subject matter jurisdiction.

According to the petition, and undisputed by Reno, Reno assigned her support rights to SRS. Under K.S.A. 39-755(a), "[i]n cases where [SRS] is deemed to have an assignment of support rights . . . [SRS] is authorized to bring a civil action in the name of the state of Kansas or of the obligee whose support rights are assigned . . . ." SRS brought such an action and named Reno as a party to the suit.

Reno does not contend that SRS lacked authority to bring the suit; rather, Reno argues that under K.S.A. 1996 Supp. 38-1117(a), she was *entitled to notice* in addition to being joined as a necessary party.

"Interpretation of a statute is a question of law, and our review is unlimited." *In re Tax Appeal of Boeing Co.*, 261 Kan. 508, Syl. ¶ 1, 930 P.2d 1366 (1997). Additionally, "[w]hen a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute." *State v. Alires*, 21 Kan. App. 2d 139, Syl. ¶ 2, 895 P.2d 1267 (1995).

K.S.A. 1996 Supp. 38-1117(a) states:

"[T]he child, the mother, each man presumed to be the father under K.S.A. 38-1114 and amendments thereto and each man alleged to be the father shall be made parties *or*, if not subject to the jurisdiction of the court, shall be given notice of the action in a manner prescribed by the court and shall be afforded the opportunity to be heard." (Emphasis added.)

K.S.A. 1996 Supp. 38-1117(a) clearly uses the word "or" rather than "and" when setting forth the joinder and notice requirements to the child, the mother, and the fathers. The result is that the plain language of K.S.A. 1996 Supp. 38-1117(a) states that the child, the mother, the presumed fathers, and the alleged fathers shall be made parties to the suit; however, if the aforementioned individuals are not made parties to the suit, then they shall be given notice of the action.

In this case, Reno was joined as a party to the action as a coplaintiff. Under K.S.A. 1996 Supp. 38-1117(a), the trial court was not required to give Reno notice of the action. Therefore, the trial court had subject matter jurisdiction over this action.

Reno next argues that the trial court erred in not holding an evidentiary hearing to determine whether paternity testing was in the best interests of the children. Reno chiefly relies upon the Kansas cases of *In re Marriage of Ross*, 245 Kan. 591, 783 P.2d 331 (1989), and *Florida Dept. of HRS v. Breeden*, 21 Kan. App. 2d 490, 901 P.2d 1357 (1995), to make her argument.

The Kansas Supreme Court held that in some parentage actions an evidentiary hearing on the best interests of the child must pre-

cede an order for paternity testing. *Ross*, 245 Kan. at 602. This type of hearing is now commonly referred to as a *Ross* hearing.

In *Ross*, R.A.R. was born during the marriage of Sylvia and Robert Ross. Two years after R.A.R. was born, Robert and Sylvia divorced. Sylvia was given primary custody of R.A.R., and Robert was granted visitation rights and ordered to pay child support. One year later, Robert was granted joint custody of R.A.R. Two years after Robert was granted joint custody, Sylvia filed a petition, pursuant to the KPA, alleging Charles Austin was the biological father of R.A.R., requesting a guardian ad litem be appointed for R.A.R., and requesting that all parties submit to paternity blood testing.

Upon the guardian ad litem's recommendation, a blood test was ordered. Subsequently, Charles filed a " 'motion to dismiss the paternity action for failure of the court to determine the best interests of the child.' " 245 Kan. at 593. The trial court denied the motion, stating that " 'it had previously been determined it was in R.A.R.'s best interests for his biological father to be determined.' " 245 Kan. at 593. The trial court further ruled that testimony would be limited to the determination of biological parentage, and Robert and Charles would not be permitted to introduce evidence of R.A.R.'s best interests.

As a result of the paternity test, Charles was found to be R.A.R.'s biological father. The trial court ordered Charles to pay child support to Sylvia and ordered R.A.R.'s visitation schedule with Robert to remain unchanged.

In reversing the trial court's order for paternity testing, the Kansas Supreme Court stated:

"When a marital relationship has been terminated, children of the marriage need for the court to provide stability in their lives, to acknowledge that their perception of time is different from that of an adult, and to take into consideration their past relationship with their parents. Prior to ordering a blood test to determine whether the presumed parent is the biological parent, the district court must consider the best interests of the child, including physical, mental, and emotional needs. The shifting of paternity from the presumed father to the biological father could easily be detrimental to the emotional and physical well-being of any child." 245 Kan. at 602.

This court considered the *Ross* decision in *Breeden*. In *Breeden*, Valarie Petit, the mother of F.E.P., made an assignment of her

rights to child support to Florida Department of Health and Rehabilitative Services (FHRS). FHRS and Valarie filed a petition alleging that at the time of F.E.P.'s birth, Valarie Petit was married to Patrick Petit. Under Kansas law, Patrick is the child's presumed father. However, in the petition, FHRS and Valarie alleged that Steven Breeden, a Kansas resident, was the biological father of F.E.P.

In comparing the facts of *Breeden* to *Ross*, this court stated:

"In a case brought under K.S.A. 38-1115(b), the ultimate issue involved is support, not custody or visitation. The KPA contains no mandate that the best interests of the child be the criteria used to determine initial support.

"However, and most importantly for the child's benefit, the *Ross* court also relied on the effect of a paternity determination on the existing relationship with the presumed father as a justification for requiring a best interests of the child hearing. The *Ross* court chastened: 'The court has not only bastardized the child and relieved the presumed father of all necessity of support, but it has placed the obligation to support the child on the biological father, who has never had a bonding relationship with the child.' " 21 Kan. App. 2d at 501-02.

Based upon the public policy that courts must " 'act in the best interests of the child *when imposing legal obligations* or conferring legal rights on the . . . father/child relationship,' " the *Breeden* court held that "a trial court is required to have a *Ross* hearing before ordering blood tests in a paternity proceeding pursuant to K.S.A. 38-1115(b)." 21 Kan. App. 2d at 503 (*quoting Ross*, 245 Kan. at 597).

Unlike *Ross* and *Breeden*, the children in this case were not born to a marriage. Furthermore, no evidence exists in the record that Miller was the presumed father of the two children. See K.S.A. 1996 Supp. 38-1114. Finally, Miller was the only alleged father involved in this action. Because these distinguishing factors were not present in either *Ross* or *Breeden*, the trial court was not required to conduct a *Ross* hearing before ordering genetic testing in this matter.

Affirmed.