**U S WEST COMMUNICATIONS, INC., Appellant (Petitioner),**

v.

**THE WYOMING PUBLIC SERVICE COMMISSION; Steve Ellenbecker, Doug Doughty, and Bil Tucker, in their official capacities as Commissioners of the Wyoming Public Service Commission; Appellees (Respondents).**

and

**Silver Star Telephone Company, Inc., Intervenor (Respondent).**

No. 96–25.

Supreme Court of Wyoming.

April 17, 1998.

William P. Heaston, Denver, CO; and Paul J. Hickey and Richard D. Bush of Hickey, Mackey, Evans, Walker & Stewart, Cheyenne, for Appellant.

William U. Hill, Attorney General; Michael L. Hubbard, Deputy Attorney General; and Ivan H. Williams, Special Assistant Attorney General, Cheyenne, for Appellees Wyoming Public Service Commission, Steve Ellenbecker, Doug Doughty and Bil Tucker.

Dennis L. Sanderson, Afton, for Intervenor Silver Star Telephone Company, Inc.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN * and LEHMAN, JJ.

* Chief Justice at time of oral argument.

TAYLOR, Chief Justice.

The citizens of Star Valley requested that separate local telephone exchanges currently provided by U S West Communications, Inc. and Silver Star Telephone Company, Inc. be combined into one local exchange. After a public hearing, the Wyoming Public Service Commission agreed and issued an order to implement the service. U S West Communications, Inc. claims that the Wyoming Public Service Commission exceeded the statutory authority conferred by the Wyoming Telecommunications Act of 1995 when it independently determined the additive rates and ordered U S West Communications, Inc. to pay Silver Star Telephone Company, Inc. an annual settlement amount.

We find that the Wyoming Public Service Commission's order must be reviewed under the authority granted by the Public Utilities Act prior to amendments effected by the Wyoming Telecommunications Act of 1995 and hold that the Wyoming Public Service Commission's order did not exceed that authority. We therefore affirm the order of the Wyoming Public Service Commission.

## I. ISSUES

Appellant, U S West Communications, Inc. (U S West), presents the following issues for review:

### I.

Whether the Commission acted in excess of its statutory authority in setting additive prices for EAS [Extended Area Service].

### II.

Whether the Commission has the authority to order U S West to remit revenues collected from its customers through an EAS additive charge to Silver Star in order to subsidize the operation and provision of EAS by Silver Star.

### III.

Whether the Commission has the authority to impose a revenue neutral standard to pricing which requires U S West to subsidize the provisioning of EAS by Silver Star.

Appellee, Wyoming Public Service Commission (PSC), responds with this statement of issues:

I. Did the Wyoming Public Service Commission act outside the scope of its statutory authority in establishing additive prices for extended area service?

II. Does the Wyoming Public Service Commission have the authority to establish a levelized extended area service additive price which results in the creation of an intercompany subsidization of a noncompetitive service?

III. Should the Wyoming Supreme Court remand the issue of pricing to the Wyoming Public Service Commission for further findings related to the extended area service additive price which was established in this case?

Intervenor, Silver Star Telephone Company, Inc. (Silver Star), joins the fray posing several new issues:

I. Does W.S. 8-1-107 preclude the Wyoming Telecommunications Act of 1995 from applying to this case?

II. Is U S West bound by the theories that it advanced before the Commission?

III. If the Telecommunications Act of 1995 applies to this case, does the Commission have authority to establish EAS under its authority to regulate quality of service and order an EAS additive and an inter-company settlement in order to maintain revenue neutrality?

IV. Was the intercompany settlement arrangement ordered by the Commission a reasonable mechanism to avoid a revenue deficiency in Silver Star and a windfall to U S West?

V. Was the intercompany settlement arrangement a subsidy?

## II. FACTS

On July 7, 1994, the Mayor of Afton, Wyoming sent a letter to the PSC requesting that an extended area service (EAS) be implemented in the upper and lower Star Valley. An EAS is a service plan in which long distance toll rates between two or more exchanges are eliminated, and all users in that area may call any exchange for a flat local rate. The Mayor's letter was accompanied by a petition bearing approximately 729 signatures of U S West customers located in Afton and Silver Star customers located in Freedom and Alpine, Wyoming. The petition also requested that the cellular service provided by Union Telephone Company (Union) be included in the EAS.

Upon receipt of the Star Valley residents' petition, the PSC notified and directed U S West, Silver Star and Union to jointly provide estimated costs, rates and a timetable for the establishment of the requested EAS. The PSC set the matter for public hearing in Afton on December 6, 1994.

At the public hearing, all parties and witnesses enthusiastically agreed that the people of Star Valley would benefit from the creation of an EAS. The parties further agreed that the implementation of the EAS should include an additive rate which would result in a return of the net revenues that were formerly received from long distance services, i.e., a "revenue neutral" transition. There was significant disagreement, however, on the actual amounts which should be attributed to long distance revenues and the allocation of responsibility for revenue reimbursement.

The difficulty lay in the manner in which long distance revenues were received by the companies. U S West was the only long distance provider for Star Valley and its revenues were received from long distance toll rates to consumers. The revenues flowing to Silver Star, however, were received in the form of payments made by U S West to Silver Star for the use of Silver Star's lines, billing, and collection services. Although the combined long distance revenues from all Star Valley exchanges netted U S West a

profit after payment to Silver Star, the revenues from the Alpine/Freedom exchange alone were less than payments made to Silver Star for services in that area. Therefore, under the old scheme between the two companies, part of the U S West long distance revenues received from the Afton area subsidized the costs of long distance service to the Alpine/Freedom area.

At the public hearing, U S West proposed that its lost revenues from the Afton exchange be replaced through an additive service charge to Afton customers and that Silver Star's lost revenues be replaced by an additive service charge to the Alpine/Freedom customers. Silver Star disagreed, alleging that U S West's proposal would result in an additive charge to the Alpine/Freedom customers in an amount significantly greater than that charged to Afton customers. Silver Star also alleged that U S West's proposal would result in a windfall to U S West in the amount used to subsidize the Alpine/Freedom service charges.

Instead, Silver Star submitted several alternative proposals, one of which provided that the same additive rate for each class of service be uniformly applied throughout Star Valley in an amount generally sufficient to meet lost revenues of both companies. U S West would then reimburse to Silver Star an amount which represented the excess additive charges collected from the Afton customers. Thus, the amounts transferred would approximate the difference between the amount Silver Star formerly billed U S West and the amount collected from additive charges to the Alpine/Freedom customers.

The PSC issued its findings of fact, conclusions of law and final order on May 11, 1995. The PSC concluded that the EAS was a noncompetitive service which would be beneficial to the general public.[1] It further found that U S West had a long distance toll loss of $73,959.00 from the Afton exchange and that Silver Star's lost revenues amounted to $158,097.00. The PSC ordered the implementation of an EAS in Star Valley and authorized a uniform rate additive of $3.65 for residential lines and $5.50 for business

1. The PSC found that Union already provided an EAS for cellular service.

lines in all the Star Valley exchanges. The order, however, did not provide for any intercompany payments.

U S West timely filed a petition for rehearing, challenging the PSC's authority to establish an additive price due to the recent enactment of the Wyoming Telecommunications Act of 1995, which was approved on March 1, 1995. U S West also alleged that the prices set by the PSC had no factual basis in the record. Silver Star responded by opposing the petition and seeking an amendment of the final order to include a directive that U S West remit to Silver Star the amount of $76,759.00 annually to achieve revenue neutrality. On July 14, 1995, the PSC denied rehearing and granted Silver Star's request.

U S West filed a petition for review with the district court on August 7, 1995. On January 3, 1996, the district court certified the appeal to this court.

## III. STANDARD OF REVIEW

■ General appellate standards used by a reviewing court of the first instance are applicable to cases certified to us pursuant to W.R.A.P. 12.09. *Union Telephone Co., Inc. v. Wyoming Public Service Com'n*, 907 P.2d 340, 341–42 (Wyo.1995). The scope of review is defined in Wyo. Stat. § 16–3–114(c) (1997), which states, in pertinent part:

(c) * * * [T]he reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. In making the following determinations, the court shall review the whole record· or those parts of it cited by a party * * *. The reviewing court shall:

* * *

(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:

(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

* * *

(C) In excess of statutory jurisdiction, authority or limitations or lacking statutory right[.]

## IV. DISCUSSION

The sole issue on appeal is whether the directives in the PSC's order exceeded its statutory authority. First, U S West contends that the PSC's order exceeded its authority under the Wyoming Telecommunications Act of 1995 (Telecommunications Act), Wyo. Stat. §§ 37–15–101 through 37–15–501 (1997), because the PSC no longer had the power to set rates for telecommunication services. Secondly, U S West claims that the PSC does not have the authority under any provision in Title 37 of the Wyoming Statutes to require U S West to pay an annual subsidy to Silver Star.

### A. APPLICABILITY OF THE WYOMING TELECOMMUNICATIONS ACT OF 1995

■ Although U S West and the PSC frame their opposing arguments under the provisions of the Telecommunications Act, Silver Star contends that the Telecommunications Act does not apply. Relying on Wyo. Stat. § 8–1–107 (1997), Silver Star argues that the PSC's authority must be determined under the Public Utilities Act, Wyo. Stat. §§ 37–1–101 through 37–14–103 (Repl.1977 & Cum.Supp.1994), because the changes contained in the Telecommunications Act were passed while this proceeding was pending.

Wyo. Stat. § 8–1–107 provides:

If a statute is repealed or amended, the repeal or amendment does not affect pending actions, prosecutions or proceedings, civil or criminal. If the repeal or amendment relates to the remedy, it does not affect pending actions, prosecutions or proceedings, unless so expressed, nor shall any repeal or amendment affect causes of action, prosecutions or proceedings existing at the time of the amendment or repeal, unless otherwise expressly provided in the amending or repealing act.

The plain language of this statute prohibits the retroactive application of new law unless: (1) the change relates to the remedy rather than a substantive right; and (2) the legislature expressed an intent that the change be applied to pending proceedings.

There can be no doubt that the proceedings, initiated by citizen petition in July 1994 and presented at a public hearing before the PSC in December 1994, were pending when the Telecommunications Act was approved on March 1, 1995. U S West argues, however, that Wyo. Stat. § 8–1–107 does not apply because the Telecommunications Act is "the creation of a new form of regulation for telecommunications companies," which did not amend or repeal any statute. For its part, the PSC insists that its powers to set rates for an EAS were not affected by the passage of the Telecommunications Act. We must, therefore, determine whether the Telecommunications Act repealed or amended the provisions of the Public Utilities Act. If so, and the change in law relates to the remedy, we review the statute to determine if the legislature expressed its intent to apply the new provisions to pending cases.

▮ When interpreting a statute, this court's primary focus is to determine the legislature's intent. *In re Honeycutt,* 908 P.2d 976, 978 (Wyo.1995). A statute will be construed as a whole with ordinary and obvious meaning applied to words as they are arranged in paragraphs, sentences, clauses and phrases to express the intent of the legislature. *Wyoming Ins. Guar. Ass'n v. Woods,* 888 P.2d 192, 197 (Wyo.1994). If the language of a statute is clear and unambiguous, we apply its plain meaning and need not resort to the rules of statutory construction. *Sue Davidson, P.C. v. Naranjo,* 904 P.2d 354, 356 (Wyo.1995); *Halpern v. Wheeldon,* 890 P.2d 562, 565 (Wyo.1995); *Houghton v. Franscell,* 870 P.2d 1050, 1054 (Wyo.1994).

▮ The language of a statute will be strictly construed when determining the powers granted to an agency. *Tri County Telephone Ass'n, Inc. v. Wyoming Public Service Com'n,* 910 P.2d 1359, 1361 (Wyo.1996); *Montana Dakota Utilities Co. v. Public Service Com'n of Wyoming,* 847 P.2d 978, 983 (Wyo.1993). "If there is a reasonable doubt as to the existence of particular power, the statute will be construed as not granting that power." *Tri County Telephone Ass'n, Inc.,* 910 P.2d at 1361.

The parties do not contest that prior to March 1, 1995, the PSC's powers relating to the regulation of telecommunications companies found in the Public Utilities Act, Wyo. Stat. §§ 37–1–101 through 37–3–115, included the power to set rates for an EAS. Under the Public Utilities Act, the PSC was granted the "general and exclusive power to regulate and supervise every public utility within the state in accordance with the provisions of this act." Wyo. Stat. § 37–2–112. The PSC's power to establish an EAS was granted in Wyo. Stat. § 37–2–122(b), which authorized the PSC to investigate services and, if it finds a service inadequate, to "prescribe and order substituted therefor such service * * * as it shall determine to be adequate * * *." The legislative authorization to set rates for such service was found in Wyo. Stat. § 37–2–121 (if any rate is found to be inadequate, the PSC may fix and order substitute rate) and Wyo. Stat. § 37–3–107 ("[w]hen joint service is participated in by two or more public utilities the commission after hearing * * * may ascertain, determine, and fix for such services just and reasonable rates * * *.").

On March 1, 1995, the Telecommunications Act was enacted to "provide a transition from rate of return regulation of a monopolistic telecommunications industry to competitive markets and to maintain affordable essential telecommunications services through the transition period * * *." Wyo. Stat. § 37–15–102. The Telecommunications Act separates and defines the PSC's rate making powers on the basis of competitive and noncompetitive telecommunications services. Competitive services are "not * * * subject to regulation of prices by the commission." Wyo. Stat. § 37–15–202(a).

The parties agree with the PSC's determination that the EAS is a non-competitive service. Regulation of the price of non-competitive services is governed by Wyo. Stat. § 37–15–203, which provides:

(a) Prices for telecommunications services which have not been determined by the legislature or the commission to be competitive shall be regulated by the commission in accordance with this section.

(b) The prices for any local exchange company may contain provisions for incentives for improvement of the company's

performance or efficiency, lowering of operating costs, control of expenses or improvement and upgrading or modernization of its services or facilities. Any local exchange company may apply to the commission for incentives and innovative or nontraditional price regulation, including price indexing. *The commission shall issue a final order approving, modifying or rejecting any application made under this subsection* within one hundred eighty (180) days of the filing date of the application with the commission. If no order is issued by the commission within the one hundred eighty (180) day period, the application shall be deemed approved as filed. *If during consideration of an application for regulation under this subsection, the commission materially alters the plan as filed in the application, the applying local exchange company may notify the commission in writing*, at any time, but not later than sixty (60) days after any final commission order on the application, *that it elects not to be price regulated as approved by the order.* The local exchange company's prices shall then be regulated as they were prior to the application until such time as a new application is filed, approved and accepted.

(c) During the transition to total service long-run incremental costs pursuant to W.S. 37–15–402, noncompetitive services prices shall be established in public hearing in accordance with the Wyoming Administrative Procedure Act and other applicable provisions of this chapter.

(d) *Any holder of a certificate of public convenience and necessity to provide local exchange service may elect to be regulated by a price index approved by the commission* The price index shall only apply to noncompetitive services offered by the exchange company. The commission may approve indexes which provide additional flexibility for nonessential telecommunications services and nonaccess services.

(Emphasis added.)

█ The PSC insists that the only logical interpretation of the language in Wyo. Stat. § 37–15–203(c) is that the legislature intended to give the PSC the authority to set rates,

after a public hearing, as an extension of its authority to approve non-traditional methods of price regulation found in Wyo. Stat. § 37–15–203(b). We disagree.

The statutory language in Wyo. Stat. § 37–15–203 is clear and unambiguous. The PSC's contention that it continues to have the authority to set rates for non-competitive telecommunications services fails to acknowledge that the new provisions expressly limit the PSC's rate setting powers to approval, modification, or rejection of a plan submitted by a company or the approval of a price index. Moreover, the company's ability *to reject* the PSC's order if its plan is materially altered, or *to elect* to be regulated by price index, is clearly inapposite to the proposition that the PSC may set a price for services over the objection of the company.

Reading the statute as a whole, it clearly aspires to the comprehensive statutory regulation of telecommunications companies. Wyo. Stat. § 37–15–408 specifically lists those statutes in the Public Utilities Act which are to be included in the Telecommunications Act. Notably, not one of the former statutes granting rate making powers to the PSC remains. "Where a statute enumerates the subject or things on which it is to operate * * * it is to be construed as excluding from its effect all those not expressly mentioned * * *." *City of Cheyenne v. Huitt*, 844 P.2d 1102, 1104 (Wyo.1993). The legislature's detailed inclusion of specific statutory provisions can only lead to the conclusion that the omitted statutory provisions were repealed and amended as applied to telecommunications regulation.

We now turn to whether the removal of the PSC's jurisdiction to set rates relates to a remedy or a substantive right. The distinction between a substantive change in law as opposed to a remedial or procedural change in law is not always clear. As acknowledged in *State ex rel. Holdridge v. Industrial Commission*, 11 Ohio St.2d 175, 178, 228 N.E.2d 621, 623 (1967):

It is doubtful if a perfect definition of "substantive law" or "procedural or remedial law" could be devised. However, the authorities agree that, in general terms, substantive law is that which creates

duties, rights, and obligations, while procedural or remedial law prescribes methods of enforcement of rights or obtaining redress.

See also State v. District Court of Second Judicial Dist., 715 P.2d 191, 194 (Wyo.1986) and Matter of Boyd's Estate, 606 P.2d 1243, 1245 (Wyo.1980). A jurisdictional change in law is generally held to be procedural or remedial. State ex rel. Frederick v. District Court of Fifth Judicial Dist. In and For Big Horn County, 399 P.2d 583, 585 (Wyo.1965); State of Fla., Dept. of Health and Rehabilitative Services on Behalf of Petit v. Breeden, 21 Kan.App.2d 490, 901 P.2d 1357, 1365 (1995). In this case, the change in the powers of the PSC did not affect the public's right to reasonable and fair rates nor did it change the substantive duties and obligations of the telecommunications companies. Rather, the amendment relates to the process by which the rates will be set and, therefore, relates to the remedy. U S West urges that because the change in law is merely procedural, we may retroactively apply the new provisions. This we cannot do. The mandatory language of Wyo. Stat. § 8–1–107 directs that an amendment relating to a remedy be applied to a pending proceeding only when the legislature has expressed its intent to do so. See Johnson v. Safeway Stores, Inc., 568 P.2d 908, 915 (Wyo.1977).

In this case, we find that there is no indication that the Telecommunications Act was intended to apply retroactively. To the contrary, the language of the Telecommunications Act acknowledges a profound change in the status quo. The legislature refers to à "transition period" and provides for the adoption of new rules and regulations. Wyo. Stat. §§ 37–15–401 and 37–15–402. Other provisions contemplate studies to be submitted for the purpose of assisting the PSC in rule making, Wyo. Stat. § 37–15–406; as well as the establishment of a universal service fund to be administered by the PSC to assist those customers in "areas of this state with relatively high rates for essential services." Wyo. Stat. § 37–15–501(c). Moreover, the provisions relating to pricing for non-competitive services place unprecedented choices in the hands of the telecommunications companies which were not contemplated when these proceedings were the subject of public hearings.

We find the language in the Telecommunications Act does not contain an express or implied intention that its provisions be applied to a case initiated through citizen petition and heard before the public prior to the statute's existence. Consequently, we hold that the PSC's authority to set rates for the implementation of an EAS and to direct U S West to make an annual payment to Silver Star must be decided under the provisions of the Public Utilities Act prior to the enactment of the Telecommunications Act.

**B. STATUTORY AUTHORITY OF THE PSC UNDER THE PUBLIC UTILITIES ACT PRIOR TO AMENDMENT**

As stated above, the parties do not contest the PSC's power to set rates for the EAS prior to the enactment of the Telecommunications Act. U S West argues, however, that nothing in Title 37 of the Wyoming Statutes allows the PSC "to take revenues derived from an additive price for a service U S WEST provides and pay those revenues to Silver Star to subsidize its EAS revenue loss." Our review of the relevant statutes compels a different conclusion.

Wyo. Stat. § 37–3–113, which no longer applies to telecommunications pursuant to Wyo. Stat. § 37–15–408, conferred a duty on the PSC to establish joint rates and charges for the transportation of messages over the lines or systems of other similar public utilities. Wyo. Stat. §§ 37–3–107 and 37–3–108, also no longer applicable, provided in pertinent part:

**§ 37–3–107. Rates for joint service by public utilities.**

When joint service is participated in by two or more public utilities the commission * * * may ascertain, determine, and fix for such services just and reasonable rates, which shall be charged, enforced, collected and observed by such public utilities.

**§ 37–3–108. Apportionment of joint rates.**

Whenever the public utilities involved shall fail to agree among themselves upon the apportionment or division of any joint

rate established by the commission * * *, the commission may issue a supplemental order declaring the apportionment or division of such joint rate.

Here, pursuant to Wyo. Stat. § 37–3–107, the PSC set a rate to be applied throughout Star Valley for the implementation of a local exchange provided by two telecommunications companies. The original order declared, as requested by the parties, that the outcome was to be revenue neutral, i.e., that U S West and Silver Star were to recoup the net revenue formerly supplied by long distance charges through rate increases. When the parties did not agree on the apportionment of the rates, pursuant to Wyo. Stat. § 37–3–108, Silver Star requested and was granted a supplemental order directing U S West to remit an annual sum in monthly payments to Silver Star.

The PSC's factual determinations and the reasonableness of the PSC's decision are not issues before this court. We therefore find that the PSC's order directing payment to Silver Star, as an apportionment of the joint rates established for the implementation of the Star Valley EAS, was within the PSC's authority under the Public Utilities Act.

## V. CONCLUSION

Pursuant to Wyo. Stat. § 8–1–107, the jurisdictional authority of the Wyoming Public Service Commission in a pending proceeding to set a price for telecommunications services is controlled by the Public Utilities Act prior to the amendments effected by the Wyoming Telecommunications Act of 1995. The Public Utilities Act granted the Wyoming Public Service Commission the power to set rates and apportion rates for joint services between utilities. Therefore, the order of the Wyoming Public Service Commission is affirmed.

LEHMAN, J., filed a concurring opinion.

THOMAS, J., filed a dissenting opinion, with which GOLDEN, J., joined.

LEHMAN, Justice, concurring.

The dissent asserts an inconsistency of result between this case and *U S West Com-* *munications, Inc. v. Public Serv. Comm'n*, 958 P.2d 371 (Wyo.1998). I feel compelled to defend the majority from that assertion.

The petition in this case was filed and hearings were held before the Wyoming Telecommunications Act of 1995 was passed by the legislature; it was only the decision of the PSC that occurred after the new law went into effect. While the dissent recognizes the issues in the two cases are "substantially identical," it avoids mention of the intervenor's issue number 1 which is the dispositive issue in this case, an issue notably absent in case 96–264, 958 P.2d 371.

The petition in 96–264, 958 P.2d 371 was also filed when the old law was in effect, but all further proceedings came after the effective date of the new law. Of more significance, the dispositive issue in this case was waived in 96–264, 958 P.2d 371, and all parties limited their issues and arguments under the new law. The issue, if the old act applied, was never raised by any party and, having been waived, could not be addressed by this court.

The most one can discern from the dissent is that W.S. 8–1–107 (1995) should not apply to administrative proceedings. We, however, recognized its application to administrative proceedings in *Wyoming Refining Co. v. Bottjen*, 695 P.2d 647 (Wyo.1985) (worker's compensation); *Ballard v. Wyoming Pari-Mutuel Comm'n*, 750 P.2d 286 (Wyo.1988) (parimutuel commission); and, notably by the dissenting author, in *Meridian Aggregates Co. v. State Bd. of Equalization*, 827 P.2d 375 (Wyo.1992). The application of § 8–1–107 to administrative proceedings is

> Stare decisis /stériy dəsáysəs/. Lat. To abide by, or adhere to, decided cases[,]

BLACK'S LAW DICTIONARY 1406 (6th ed.1990), and unless we were to overturn our previous holdings, would it not be inconsistent to assert otherwise?

THOMAS, Justice, dissenting, with whom GOLDEN, Justice, joins.

I have been struggling to reconcile this case with *U S West Communications, Inc. v. Wyoming Public Service Comm'n*, 958 P.2d 371 (Wyo.1998), and I have been unable to do

that. These two cases are peas out of the same pod.

In this case, the majority opinion quotes from the appellant, U S West Communications, Inc. (U S West), the following issues for review:

## I.

Whether the Commission acted in excess of its statutory authority in setting additive prices for EAS [Extended Area Service].

## II.

Whether the Commission has the authority to order U S West to remit revenues collected from its customers through an EAS additive charge to Silver Star in order to subsidize the operation and provision of EAS by Silver Star.

## III.

Whether the Commission has the authority to impose a revenue neutral standard to pricing which requires U S West to subsidize the provisioning of EAS by Silver Star.

The Appellee, Wyoming Public Service Commission (PSC), responds with this statement of issues:

I. Did the Wyoming Public Service Commission act outside the scope of its statutory authority in establishing additive prices for extended area of service?

II. Does the Wyoming Public Service Commission have the authority to establish a levelized extended area service additive price which results in the creation of an intercompany subsidization of a noncompetitive service?

III. Should the Wyoming Supreme Court remand the issue of pricing to the Wyoming Public Service Commission for further findings related to the extended area service additive price which was established in this case?

The Intervenor, Silver Star Telephone Company, Inc. (Silver Star), poses several new issues:

I. Does W.S. 8–1–107 preclude the Wyoming Telecommunications Act of 1995 from applying to this case?

II. Is U S West bound by the theories that it advanced before the Commission?

III. If the Telecommunications Act of 1995 applies to this case, does the Commission have authority to establish EAS under its authority to regulate quality of service and order an EAS additive and an inter-company settlement in order to maintain revenue neutrality?

IV. Was the intercompany settlement arrangement ordered by the Commission a reasonable mechanism to avoid a revenue deficiency in Silver Star and a windfall to U S West?

V. Was the intercompany settlement arrangement a subsidy?

In *U S West Communications, Inc. v. Wyoming Public Service Comm'n*, No. 96–264, 958 P.2d 371 (Wyo.1998), U S West Communications, Inc., set forth these issues in its brief:

I. Whether the Wyoming Public Service Commission ("PSC") acted in excess of its statutory authority in setting additive prices for Extended Area Service ("EAS").

II. Whether the PSC has the authority to order U S WEST Communications, Inc. ("U S WEST") to remit revenues from the EAS additive prices, collected by U.S. WEST from its customers, to Union Telephone Company, Inc. ("Union") in order to subsidize Union's operation and provision of EAS to its customers.

III. Whether the PSC has the authority to unilaterally change a customer petition for EAS service into a price regulation application by U S West as defined and governed by the provisions of W.S. § 37–15–203(b).

The PSC, as Appellee in that case, responded with this statement of issues:

I. Did the Wyoming Public Service Commission act within the scope of

its statutory authority in establishing additive prices for extended area of service?

II. Does the Public Service Commission have the authority to require U.S. West to remit revenues from the Extended Area Service additive prices collected by U.S. West to Union Telephone Company?

III. Does the Public Service Commission have the authority to consider the application by U.S. West for pricing of a noncompetitive service as an application for innovative and non-traditional price regulation pursuant to the 1995 Wyoming Telecommunications Act?

The issues as stated by the U S West Communications, Inc. and the PSC in the two cases are substantially identical.

In this case, the Mayor of Afton initiated the administrative proceeding by a letter accompanied by a petition signed by 729 U S West customers. In *U S West Communications, Inc. v. Wyoming Public Service Comm'n*, 958 P.2d 371 (Wyo.1998), 132 residents of Rock River, customers of Union Telephone Company, Inc., petitioned the PSC to establish an extended area service between their exchange and the Laramie exchange, which was serviced by U S West. The petition in that case was filed late in 1994, although no hearing was held until after March 1, 1995. In this case, the petition was presented in July of 1994, with the first hearing held in December of that year. In both cases, the administrative order that was appealed, after finding that the EAS was a non-competitive service, established an additive price, the effect of which was that U S West was required to subsidize the cost of local service for the other exchange involved in the extended area service implemented by the Commission order.

In this case, the majority affirms the action of the PSC, holding that because the proceedings were initiated before the effective date of the Wyoming Telecommunications Act of 1995, Wyo. Stat. §§ 37–15–101 through 501 (Supp.1995), the prior law is controlling, and the PSC had authority to enter the order that is appealed. In *U S West Communications, Inc. v. Wyoming Public Service Comm'n*, 958 P.2d 371 (Wyo. 1998), the Court holds no local exchange company had filed an application for price regulation pursuant to Wyo. Stat. § 37–15–203(b), and the PSC was without authority to enter the order establishing the additive price. In this case, the majority justifies its decision by holding that pursuant to Wyo. Stat. § 8–1–107 (1989), the "civil or criminal" proceedings were initiated prior to the effective date of the Wyoming Telecommunications Act of 1995, and for that reason the action of the PSC was controlled by the law in effect at the date the proceedings were initiated. The authority to set the rate is found in Wyo. Stat. § 37–3–107 (1977) under prior law. This provision is unchanged by the Wyoming Telecommunications Act of 1995, and presumably would justify the PSC order in *U S West Communications, Inc. v. Wyoming Public Service Comm'n*, No. 96–264, 958 P.2d 371 (Wyo.1998), which we reverse.

While I do not agree with the PSC that it had authority to establish the additive prices at issue in these cases, I must credit the Commission with consistency. That is not true with respect to the two decisions of this Court. I have grave doubts as to whether administrative proceedings were encompassed in the intent of the legislature when Wyo. Stat. § 8–1–107 was adopted, since it antedated the Wyoming Administrative Procedure Act, Wyo. Stat. §§ 16–3–101 through 114 (1990 & Supp.1994), by more than fifty years, and in fact was adopted before the PSC was created. I would construe that statute to extend, as its terms connote, only to civil and criminal actions, proceedings and prosecutions, and would not apply it in administrative agency cases. I would hold that the legislature can revoke the authority of any administrative agency at any time, and' the PSC, at the time it entered the order, had no regulatory authority in this case. That is the effect of our holding in *U S West Communications, Inc. v. Wyoming Public Service Comm'n*, No. 96–264, 958 P.2d 371

(Wyo.1998), and I am satisfied that is the correct result.

Either the order of the PSC should be reversed in this case, or the order of the PSC should be affirmed in *U S West Communications, Inc. v. Wyoming Public Service Comm'n,* 958 P.2d 371 (Wyo.1998). The cases are substantially identical, and we cannot reverse in one instance and affirm in the other. I choose to reverse in both cases, and consequently, I dissent from the majority affirmance in this case.